**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 08-1345 (RMC)** |
| | ) | **ECF** |
| **v.** | ) | |
| | ) | **Plaintiff's Opposition to Emergency** |
| **8 GILCREASE LANE, QUINCY** | ) | **Motion for Return of Seized Funds** |
| **FLORIDA 32351, *ET AL.*,** | ) | **and/or for Evidentiary Hearing** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **Thomas A. Bowdoin, Jr.** | ) | |
| **Bowdoin/Harris Enterprises, Inc. &** | ) | |
| **Adsurfdaily, Inc.** | ) | |
| | ) | |
| **Claimants.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO CLAIMANTS' EMERGENCY
MOTION FOR RETURN OF SEIZED FUNDS**

***COMES NOW***, plaintiff United States of America, by and through its attorney, the

United States Attorney for the District of Columbia, to oppose the Emergency Motion for Return

of Seized Funds that several of the current "claimants" to some of the defendant properties have,

through their counsel, filed in this case.[1]

---

[1] An entity known as Adsurfdaily, Inc. (aka "ASD") filed a claim to what it identifies as
the approximately $53 million previously held on deposit . . . in accounts in the names of
Thomas A. Bowdoin, Jr., sole proprietor, d/b/a Adsurfdaily." See Docket, Document 6-2. But,
apparently out of concern about the questionability of a corporation's effort to claim funds that
Thomas Bowdoin held in bank accounts he opened and exclusively controlled (for what he told
the bank was his "sole proprietorship"), Thomas Bowdoin has also filed a claim indicating that
the funds might be his. These inconsistent ownership claims cannot both be true and can be
expected to be explored during discovery. In any case, because Bowdoin calls himself ASD's
president, secretary, treasurer, and director, for purposes of "their" motion for return of property,
Bowdoin and ASD can be treated as *alter egos*.

**BACKGROUND**

The government brought this Complaint on August 5, 2008.  On August 15, 2008, the Court docketed a pleading styling itself as containing verified claims by:  (1)  Bowdoin/Harris Enterprises, Inc.; (2) Adsurf Daily, Inc.; and (3) Mr. Thomas A. Bowdoin, Jr.  The same counsel filed the pleading attaching all three claims.

Civil forfeiture cases are governed by the procedures codified at 18 U.S.C. § 983 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (particularly Supplemental Rule G).  Section 983 sets forth the procedures that a "claimant" within the meaning of subsection 983(a) must satisfy before a Court may release property that has been seized for civil forfeiture.  One of those requirements is that the claimant "must request possession of the property from the appropriate official, and the request must set forth the basis on which the requirements of paragraph (1) [subsection 983(f)(1)] are met."  Neither Bowdoin, nor his lawyers, satisfied this statutory prerequisite.  The conditions they now suggest to the Court were never vetted to the government.  Nor does Bowdoin's submission here ever discuss the requirements of section 983(f)(1).  For this reason alone, this motion could be denied.

Instead, on August 18, 2008, Bowdoin/Harris Enterprises, Inc.; Adsurf Daily, Inc.; and Mr. Thomas A. Bowdoin, Jr., as claimants, fired off an "Emergency Motion For Return Of Seized Funds . . . And Motion To Dismiss" by which Bowdoin asks the Court to release the funds agents seized from his bank accounts because, he says, without "emergency relief[,] the company will soon collapse completely.  Its member base, its most important asset, will disappear, and its employees will be out of work."  Emergency Motion at 1.  Furthermore, says Bowdoin, an emergency exists because "[ASD] has been unable to pay . . . its landlord and is

2

hurtling down into a steep financial tailspin." <u>Id</u>.

Bowdoin knows from personal experience why ASD's customers will stop paying ASD for advertising services if ASD is unable to use the seized funds to pay the so-called rebates it promised. To secure some of ASD's rebates himself, Bowdoin promoted a bogus website through ASD. Bowdoin explained to the Secret Service that he used the "advertising" he secured from ASD to promote GPS Tech, an unsuccessful business endeavor that had already been dissolved.[2] When Bowdoin (through his attorneys) tells this Court that "[t]he members paid solely for ASD's advertising services" (Emergency Motion at 13), he continues to perpetuate a scheme that provided him with handsome profits.[3]

Most of the remaining twenty pages of Bowdoin's Emergency motion are not just irrelevant to the emergency relief he requests, but utter nonsense. Bowdoin says that he has hired a lawyer named Gerald Nehra, who fashions himself as the country's foremost expert in refuting Ponzi schemes, to prove that ASD was not one. Remarkably, Bowdoin attaches an affidavit from this lawyer to the very same pleading in which Bowdoin says that *his customers will evaporate unless he is permitted to pay them* with the funds they supposedly paid to him for advertising!

---

[2] Bowdoin also acknowledged that he modeled ASD after 12dailypro, that ASD had no significant income (except maybe a couple thousand dollars) other than what its members paid in (and expected back as rebates). Bowdoin said he was not sure how ASD differed from 12dailypro except, he said, ASD did not guarantee a particular percentage, and its payments were only based on its sales. Bowdoin acknowledged that representations that he had met with the Securities and Exchange Commission (SEC) in Washington, DC, and representations that a team of SEC attorneys that he hired had approved of his operation <u>were made up</u>, as was ASD's representation that Bowdoin had been awarded a Medal of Distinction by President Bush for business acumen.

[3] In the Complaint, the government highlighted some of Bowdoin's recent purchases. Thereafter, Bowdoin told his followers that the lake-front real estate and water toys he bought was for their use when they visited him in Quincy.

Bowdoin concludes his motion by arguing, for several pages, that this Court should provide him with a <u>Franks</u>[4] hearing which, as this Court knows, explores whether his Fourth Amendment rights might have been violated.  Apparently, he forgets that this is a civil forfeiture case.  <u>See</u> Rule G(8)(a); <u>INS v. Lopez-Mendoza</u>, 468 U.S. 1032, 1039-40 (1984) (noting, in *dicta*, that forfeiture proceedings against forfeitable property are not precluded by an unlawful seizure); <u>United States v. Property, Parcel of Aguilar</u>, 337 F.3d 225, 234 (2d Cir. 2003) (an illegal seizure, standing alone, does not immunize property from forfeiture; it only precludes the Government from introducing evidence gained by the seizure in the forfeiture case).

Bowdoin's only relevant legal discussion is buried in a footnote at the outset of his Emergency Motion.  In footnote 1, Bowdoin acknowledges his awareness of 18 U.S.C. § 983(f), the statute that governs all requests for the pre-trial release of property that has been seized for civil forfeiture.  <u>See</u> <u>e.g.</u>, <u>United States v. Douleh</u>, 220 F.R.D. 391, 396 (W.D.N.Y. 2003) (section 983(f) is the exclusive remedy for seeking pre-trial release of property to avoid a hardship; Rule 41(g) motion dismissed).  But, says Bowdoin, this Court should decide his Emergency Motion outside the parameters of section 983(f) because he has crafted conditions that work better for him than the requirements Congress imposed.  In short, Bowdoin prays that the Court will ignore applicable law and entrust these funds, instead, to a convicted fraudster.

## ANALYSIS

Section 983(f) motions are, by the terms of the statute, limited to cases where pretrial release of seized property subject to civil forfeiture is necessary to prevent substantial hardship.  Even then, a court may return property pending its forfeiture only where a claimant seeking

---

[4] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

4

release establishes that the substantial hardship outweighs the risk that the property will not be available for forfeiture.  See e.g., United States v. Undetermined Amount of U.S. Currency, 376 F.3d 260 (4th Cir. 2004) (under section 983(f)(1)(D), court must make three findings:  (1) the risk that the property will not be available; (2) the hardship to the claimant; and (3) whether the hardship outweighs the risk)).  As shown below, the arguments claimants offer in their section 983(f) motion fall far short of meeting their threshold showing.  Moreover, under section 983(f)(8), the balancing test does not come into play because, by statute, no pretrial release of currency, other monetary instruments or electronic funds is available "unless such currency, or other monetary instrument, or electronic funds constitutes the assets of a legitimate business which has been seized."  Claimants' business (legitimate or otherwise) has not been seized.

## 1.    The Funds Will Not Be Available For Forfeiture If Released.

In drafting section 983(f), Congress recognized that cash was almost never likely to be available for trial if released pretrial and, therefore, it precluded the release of cash in almost all civil forfeiture cases.  See 18 U.S.C. § 983(f)(8); see also United States v. $1,231,349.68 in Funds, 227 F. Supp.2d 125, 129 (D.D.C. 2002) (denying pretrial release of seized cash because the likelihood that it would be unavailable for trial is "almost assured").  In this case, as further discussed in subsection 3, a statutory prohibition bars the requested relief.

But, even were a blanket prohibition inapplicable, rejecting ASD's 983(f) motion should prove easy because ASD concedes that the seized funds will not be available for forfeiture should they be released now.  According to ASD, it needs this Court to order the seized funds returned so that ASD can sustain its membership base by paying 125% (and better) "rebates."  (This, of course, assumes that a financial institution will agree to do business with Bowdoin/ASD.)  In its

emergency motion, ASD acknowledges that the rebates were what induced individuals to purchase so-called ad packages in the first place. In other words, ASD wants the funds so it can pay them out. Emergency Motion at 5 ("seizure . . . prevents ASD from paying all of its general creditors, including the members who wanted to cash out their ASD memberships.").

Of course, a representation that the funds will be transmitted to third parties, ASD's general creditors and so-called customers, flouts ASD's duty under section 983(f)(1)(B) to show that the funds will be available for forfeiture at the time of trial (show to this Court and, even before that, to the government in the request it was obligated by section 983(f)(2) to have submitted to it before charging into a court). Given that ASD intends to dissipate the funds upon their return, the property's unavailability is assured. No alleged hardship outweighs certain dissipation of the defendant *res*.

## 2.   Bowdoin Cannot Demonstrate That A Substantial Hardship Exists.

Within the many pages Bowdoin uses to throw dirt at the government's prosecution of this forfeiture case, Bowdoin actually digs himself into a deeper hole. To this Court, Bowdoin reports that a hardship now exists because, he says, "[i]t is the Government's seizure of ASD's bank accounts which prevents the ASD members from continuing to advertise." Id. at 5. But, Bowdoin fails to explain why a seizure of ASD's sales proceeds would preclude ASD's members from continuing to buy ASD's advertising. One would expect customers to flock to any business that sold a needed and legal service in a cost-effective manner.

Of course, free (and here, better than free) advertising is no "sale" at all. Bowdoin's dilemma is that, without access to the seized money, he cannot pay the rebates that have fostered his ability to expand the base of contributing members. Unless individuals continue to be paid

the profitable rebates Bowdoin has promised to pay to them (on page 5 of his Emergency Motion, Bowdoin calls this "cash[ing] out their ASD memberships"), individuals will not continue to send their money to Bowdoin. When he recognizes that unless ASD is permitted to pay its so-called customers the promised returns, they'll go away, Bowdoin also admits that his business is not to sell advertising.

Bowdoin also insists that he needs the $53 million released to pay rent. Bowdoin's omission of how much rent is due, or to whom rent is due, may be calculated. Bowdoin, or one of the other claimants that he owns or controls, owns one of the office buildings from which ASD operates (after purchasing the old Masonic Temple at 2 North Adams, Quincy FL, for $800,000 cash), and Bowdoin's wife owns the other (her former flower shop at 11 South Calhoun Street, Quincy, FL).

Without much investigation, ASD's attorneys would have known that many of their other "allegations and other factual contentions [lack] evidentiary support," too. See Fed. R. Civ. P. 11(b)(3). For example, Bowdoin recently told his followers that ASD was not a Ponzi because the seized funds were more than adequate to cover the cash-out balances of all the members – with millions to spare. The other story, which he tells this Court, is that litigation lasting even three months will bankrupt ASD (despite its supposed cash surplus). Emergency Motion at 2. In truth, *ASD was insolvent before the funds at issue here were seized*. According to its own records, ASD sold ad packages worth approximately $39 million during the Miami rally, worth over $29 million from the Tampa convention, and worth over $27 million from the Chicago rally. See Exhibit 1. Even without including ad "sales" that occurred over the Internet and the bonuses offered to rally participants, ASD would need assets of more than $118 million to pay

7

these individuals their 125% return.[5]  As many of ASD's followers know, including those

individuals with special side agreements, Bowdoin actually promised to return even greater

percentages to many of those who agreed to join his flock and promote his get-rich-quick

scheme.

Bowdoin tells this Court that ASD is out of money.  But he told the Secret Service that an

Antigua account (in another name), holds over one million ASD dollars.  This Court should

require Bowdoin to repatriate those funds before entertaining further discussion of any

"emergency."

### 3.    Even If A Balancing Of Equities Were To Cut In Bowdoin's Favor, Section 983(f)(8) Precludes The Relief He Requests.

Under applicable law, Bowdoin has no basis for requesting that the seized funds be

returned to him prior to adjudication of their forfeitability.  Congress, recognizing that currency

other monetary instruments, and electronic funds were the type of property most likely to be

dissipated upon return, prohibited the pretrial release of such property – except in cases where a

legitimate business was seized (and even then, only after the legitimate business establishes that

its hardship outweighs the risk of dissipation or loss).  See 18 U.S.C. § 983(f)(8)(A); see also

United States v. All Funds Seized from Suntrust Account xxx8359, et al., No. 05-2497 (RMC)

(D.D.C. Mar. 17, 2006) (denying section 983(f) motion seeking funds of a business that has not,

itself, been seized) (copy attached as Exhibit 2); United States v. Contents of Account

---

[5] We have received numerous calls, letters and emails from ASD followers who were told by Bowdoin to praise ASD's cost-effective advertising and protest the government's intervention before so-called "rebates" stopped flowing.  Few (if any) individuals indicated that they would have purchased ASD advertising without the promised returns, and many believe the money Bowdoin controlled was owned by the members, not him.

4000393242, No. C-1-01-729 (S.D. Ohio Mar. 13, 2002) (under section 983(f)(8), claimant may

not seek release of funds seized from bank account unless he establishes that they were funds

from a legitimate business that was seized; the reference is to *the seizure of the business*, not to

the seizure of the funds) (copy attached as Exhibit 3); $1,231,349.68 in Funds, supra, 227 F.

Supp.2d at 129 (recognizing that claimants must prove legitimacy of business and denying

pretrial release of seized cash).

 In this case, the government seized cash from the bank accounts of an individual.  But

even if the funds belonged to a business, the government did not seize the business, itself.

Because the business was not seized, any effort on Bowdoin's part to establish that the seized

funds constitute assets of a *legitimate* business is, at this stage, irrelevant.

 Ultimately, alongside Bowdoin's recent admission that he needs the seized funds to keep

the membership base from evaporating, Bowdoin's acknowledgment that ASD had almost no

revenue independent of what its members pay, and Bowdoin's knowledge that ASD was selling

income streams, not advertising, his truthful Answer to the Verified Complaint should support a

motion for judgment on the pleadings in favor of the government.

**<u>CONCLUSION</u>**

 For the foregoing reasons, the United States respectfully submits that Bowdoin's/ASD's

Emergency Motion for the Return of Seized Funds should be DENIED.

      Respectfully submitted,

       _/s/_____

      JEFFREY A. TAYLOR, DC Bar #498610
      United States Attorney

_/s/_____

WILLIAM R. COWDEN, DC Bar # 426301
Assistant United States Attorney
U.S. Attorney's Office
Criminal Division
District of Columbia
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 307-0258

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Opposition to be served by means of the Court's ECF system on this 25th day of August 2008 upon claimants' counsel of record.

_/s/_____

William R. Cowden

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 08-1345 (RMC)** |
| | ) | **ECF** |
| **v.** | ) | |
| | ) | |
| **8 GILCREASE LANE, QUINCY** | ) | |
| **FLORIDA 32351, *ET AL.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **Thomas A. Bowdoin, Jr.** | ) | |
| **Bowdoin/Harris Enterprises, Inc. &** | ) | |
| **Adsurfdaily, Inc.** | ) | |
| | ) | |
| **Claimants.** | ) | |
| | ) | |

## O R D E R

Upon consideration of claimants' Emergency Motion for Return of Seized Funds, the

Opposition thereto, and the entire record herein, it is this _____ day of

_____, 2008

HEREBY Ordered that claimants' motion is DENIED.

_____
ROSEMARY M. COLLYER
United States District Judge

# Tampa Convention Financial Results

Number of Registered Guest

| | | |
|---|---|---:|
| Checks and Money Orders | $ | 20,555,267.00 |
| Personal Checks | $ | 93,296.00 |
| Cash Balance Upgrades | $ | 8,264,630.11 |
| Direct Deposit | $ | 166,680.00 |
| Bank Wire | $ | 48,000.00 |
| STP's | $ | 12,275.00 |
| **Total Ad Package Sales** | **$** | **29,140,148.11** |

**Convention Registration Revenue**

| | | |
|---|---|---:|
| Late Registration | $ | 2,750.00 |
| Cash Balances | $ | 148,975.00 |
| Checks - Previously Posted | $ | 69,765.00 |
| Checks - Late Registration | $ | 14,105.00 |
| Direct Deposits | $ | 30,675.00 |
| Alert Pay | $ | 1,800.00 |
| Bank Wire | $ | 4,475.00 |
| I-Pay | $ | 150.00 |
| | $ | 272,695.00 |
| Cost of Convention | $ | (237,482.37) |
| **Net Convention Revenues** | **$** | **35,212.63** |

# Miami Rally Financial Results

| | | |
|---|---|---|
| Number of Registered Guest | | 2530 |
| Checks and Money Orders | $ | 29,485,240.00 |
| Cash Balance Upgrades | $ | 9,198,495.93 |
| Credit Card Sales | $ | 587,536.44 |
| Problem Sales | $ | 13,710.00 |
| **Total Ad Package Sales** | **$** | **39,284,982.37** |
| | | |
| Promo Sales (Includes Sales Tax of $796.80) | $ | 11,420.81 |
| Posting to Members Account's on Site | $ | 4,076,377.32 |

# Chicago Rally Financial Results

| | |
|---|---|
| Number of Registered Guest | 4101 |
| Checks and Money Orders | $ 16,381,949.11 |
| Cash Balance Upgrades | $ 10,007,697.98 |
| Credit Card Sales | $ 1,069,000.00 |
| Problem Sales | $ 26,200.00 |
| **Total Ad Package Sales** | $ 27,484,847.09 |
| Promo Sales (Includes Sales Tax of $948.73) | $ 13,598.40 |
| Posting on Site to Members Accounts | $ 2,110,267.53 |

Revised 7-24-08

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2497 (RMC)** |
| | ) | |
| **ALL FUNDS SEIZED FROM OR ON** | ) | |
| **DEPOSIT IN SUNTRUST ACCOUNT** | ) | |
| **NUMBER xxxxxxxx8359, IN THE** | ) | |
| **NAME OF GOLD AND SILVER** | ) | |
| **RESERVE, INC., AND ALL FUNDS ON** | ) | |
| **DEPOSIT IN REGIONS BANK** | ) | |
| **ACCOUNT NUMBER xxxxxx4851, IN** | ) | |
| **THE NAME OF GOLD AND SILVER** | ) | |
| **RESERVE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Before the Court are Defendant Gold & Silver Reserve Inc.'s ("GSR") Motion for

Judgment on the Pleadings or, in the alternative, for Summary Judgment [Dkt. #15] and Motion for

the Release of Seized Property pursuant to 18 U.S.C. § 983(f) [Dkt. #11].  Because the parties are

familiar with the background facts, the Court refers to them only as necessary for its decision.

The Court will deny GSR's Motion for Judgment on the Pleadings.  On a motion for

judgment on the pleadings, "a defendant may not succeed . . . if there are allegations in the complaint

which, if proved, would provide a basis for recovery." *Haynesworth v. Miller*, 820 F.2d 1245, 1254

(D.C. Cir. 1987).  Further, "the plaintiff enjoys the benefit of all inferences that plausibly can be

drawn from well-pleaded allegations of the complaint." *Id.*  Here, even under its preferred

construction of the statutory scheme, about which the Court expresses no opinion, GSR faces

exposure under 18 U.S.C. § 1960, and is thus susceptible to a civil forfeiture action under 18 U.S.C. § 981, if it is required to file reports under 31 U.S.C. § 5313.  Whether GSR is required to file reports under 31 U.S.C. § 5313 is a question that is heavily fact dependent.  However, at this stage of the litigation, the record — while replete with argument — is nearly devoid of facts.  In its Answer, moreover, GSR has for the most part denied the allegations in the Complaint "for lack of knowledge or information sufficient to form a belief as to the[ir] truth."  Answer ¶¶ 6-8, 13, 15, 22-28.  Giving the benefit of all plausible inferences to the Government, as the Court must, this motion will be denied.  *See Haynesworth*, 820 F.2d at 1254.

The Court will likewise deny without prejudice GSR's Motion for Summary Judgment.  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that, first, 'there is no genuine issue as to any material fact' and, second, 'the moving party is entitled to a judgment as a matter of law.' "  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Fed. R. Civ. P. 56(c)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  *Holcomb*, 433 F.3d at 895.  As discussed above, disputed issues of material fact preclude summary judgment here.  *See id.*  In addition, Local Civil Rule 7(h) provides that a "motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  LCvR 7(h).  No such statement accompanies GSR's motion.  This motion will also be denied.

Finally, the Court will deny GSR's Motion for the Release of Seized Property pursuant to 18 U.S.C. § 983(f). As an initial matter, GSR cannot avail itself of the protections of § 983(f) because it has not established that the seized "currency . . . constitutes the assets of a legitimate *business which has been seized*." 18 U.S.C. § 983(f)(8)(A) (emphasis added). The Court reads the phrase "which has been seized" to modify the immediately preceding noun, "business," and notes that GSR does not suggest an alternative reading short of ignoring the phrase "which has been seized" altogether. There being no dispute that some of GSR's funds, but not its business, have been seized, the Court finds that § 983(f) provides GSR no relief. *See id.*

In the alternative, the Court finds that GSR's "likely hardship" from the Government's continued possession of the seized funds does *not* outweigh the risk that the funds will be "transferred" if returned to GSR's control. *See* 18 U.S.C. § 983(f)(1)(D). In its legal memoranda to the Court, GSR has repeatedly asserted that the arrest of the subject funds has halted transactions with its clients, and that release would allow those transactions to proceed. *See, e.g.*, Def.'s MJOP/MSJ Reply at 4 ("If a client chooses to sell e-gold, that client 'clicks' e-gold over to [GSR] and receives a wire in exchange. The money currently under arrest in this case is . . . to be used to complete these exchange operations."); Def.'s § 983(f) Mot. at 2 (stating that GSR's "business continues to hemorrhage" as a consequence of its inability to "touch, move or otherwise affect any of the contents of those bank accounts"); Def.'s § 983(f) Mot. at 3 (arguing that the funds should be released because their seizure has made GSR "unable to complete the wire transactions that allow its business to operate"). Given these assertions, GSR cannot plausibly argue that the seized funds, if released, are not likely to be "transferred." GSR's contention that any "dissipation" caused by transfer of the seized money would be offset by an increase in GSR's e-gold reserve — and,

3

correspondingly, that the "value of the funds" in the arrested accounts, if not the actual dollars themselves, will remain available for forfeiture in the event of trial — is not persuasive. *See* Def.'s § 983(f) Reply at 11. This motion will also be denied.

Accordingly, based upon the parties' motions, the oppositions and replies thereto, the arguments presented at a motions hearing in open court on March 16, 2006, and the entire record of this case, it is hereby

**ORDERED** that Defendant Gold & Silver Reserve Inc.'s Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment [Dkt. #15] is **DENIED**; and it is

**FURTHER ORDERED** that Defendant Gold & Silver Reserve Inc.'s Motion for the Release of Seized Property pursuant to 18 U.S.C. § 983(f) [Dkt. #11] is **DENIED**; and it is

**FURTHER ORDERED** that this matter shall promptly be set for an Initial Scheduling Conference, via telephone, at a date and time to be selected by the Deputy Clerk. The parties are further advised that the Court remains willing to treat this matter, insofar as is practicable, on an expedited basis.

**SO ORDERED**.


Date: March 17, 2006                    _____/s/_____

                                        ROSEMARY M. COLLYER
                                        United States District Judge

4

FILED
KENNETH J. MURPHY

02 MAR 13 AM 10: 28

U.S. ...... COURT
SOUTHERN DIS..F OHIO
WEST DIV CINCINNATI

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| United States of America | : | |
| | : | Case No. C-1-01-729 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | | ORDER DENYING |
| Contents of Account No. 4000393243 | | CLAIMANTS' MOTION |
| *et al.* | | |
| Defendants | | |



This matter comes before the Court on the Motion by Claimants on Behalf of Defendant Three, to Adopt and Incorporate Unity Wholesale Grocery, Inc.'s and Tareq Shalash's Motion for Release of Seized Property and Proposed Findings of Fact. (Doc. #22.) The Court allows the movants to adopt and incorporate the arguments of the earlier motion, but such arguments, applied to the instant facts, cannot earn the relief requested. Therefore, as explained more fully below, the Court **DENIES** Claimants' Motion.

This is an in rem forfeiture action brought by the United States against four bank accounts. The government alleges that these accounts are forfeitable because they are connected to transactions involving stolen goods. The Court issued a warrant of arrest in rem on October 25, 2001. (Doc. #2.) United Trading Company, Anas Shalash, and Ziyad Shalash (together "Claimants") are claimants in this action.

38

Claimants seek return of seized property[1] pursuant to 18 U.S.C. § 983(f), which governs "Release of seized property." That section provides:

> (1) A claimant under subsection (a) is entitled to immediate release of seized property if–
> (A) the claimant has a possessory interest in the property;
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the seized property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
> (E) none of the conditions set forth in paragraph (8) applies.

Id. Paragraph (8) instructs, "This subsection shall not apply if the seized property–(A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized." 18 U.S.C. § 983(f)(8).

Here, the seized property is currency or other monetary instruments. Thus, § 983(f) does not apply "unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized." In this exception, *a legitimate business* is singular, *assets* is plural, and *has been seized* is singular; therefore, *has been seized* grammatically must refer to *a legitimate business*, not *assets*. Here, the government has not sought to seize any business, legitimate or otherwise. The Defendants are all bank accounts. By its plain language, then, § 983(f) is inapplicable.

---

[1] The government argues that neither Ziyad Shalash nor Anas Shalash has standing to seek the release of the third Defendant, since that account was not in their names. The Court need not address this argument because the instant motion fails on the merits.

2

One might construe Claimants' Motion as arguing that although the government has not

formally seized United Trading Company, it has constructively done so. The Court need not address

whether constructive seizure is sufficient to invoke the exception in § 983(f)(8), however, because

Claimants have not provided evidence of the sort of facts that would amount to constructive seizure.

Claimants have not demonstrated, for example, that the government has taken all of the real property

of United Trading Company, nor have they demonstrated even that the government has seized all

of the currency owned by United Trading Company. Instead, they have submitted evidence that the

government has seized money that United Trading Company otherwise would use to pay outstanding

obligations, and that such seizure works a very substantial hardship on United Trading Company's

business operations.  (Ziyad Shalash Aff. at 2.)  But this showing necessarily must fail to

demonstrate that a business has been seized under § 983(f)(8) because a contrary conclusion would

render extraneous § 983(f)(1)(C)'s required showing of "substantial hardship . . . such as preventing

the functioning of a business."[2]

---

[2]      Claimants also argue that what has been seized is disproportionate to the illegal
conduct alleged. 18 U.S.C. § 983(g)(1) provides, "The claimant under subsection (a)(4) may petition
the court to determine whether the forfeiture was constitutionally excessive." The government
argues that this section is inapplicable to the instant Motion because *was* is in the past tense. More
to the point, § 983(g)(1) refers to the proportionality of a forfeiture. No forfeiture has occurred yet
in this case, just a seizure. Thus, § 983(g)(1) is inapplicable by its terms to the instant Motion, and
Claimants seemed to concede this point at a January 4, 2002 hearing on the Motion. Nevertheless,
Claimants urge that a court must be able to consider the proportionality of a pre-forfeiture seizure.
Proportionality may well be a relevant consideration under § 983(f), perhaps as part of the balancing
test of § 983(f)(1)(D), but the Court need not decide the question because Claimants cannot satisfy
§ 983(f)(1)(E).

For the foregoing reasons, the Court hereby **DENIES** the Motion by Claimants on Behalf of Defendant Three, to Adopt and Incorporate Unity Wholesale Grocery, Inc.'s and Tareq Shalash's Motion for Release of Seized Property and Proposed Findings of Fact.  (Doc. #22.)

IT IS SO ORDERED.

Susan J. Dlott
United States District Judge

4