<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 08-1345 (RMC)** |
| ) | **ECF** |
| **v.** ) | |
| ) | |
| **8 GILCREASE LANE, QUINCY** ) | |
| **FLORIDA 32351,** *ET AL.***,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

<div align="center">

**PLAINTIFF'S OPPOSITION TO MEMBERS'**
**AND VICTIMS' MOTIONS TO INTERVENE**

</div>

Plaintiff, the United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to would-be claimants' Motions to Intervene.[1]

In papers that the Clerk's Office has docketed as Motions to Intervene, various would-be intervenors appear to seek dismissal of this forfeiture case, and return to them of funds seized from bank accounts that were, before their seizure, under the control of operators of Ad Surf Daily ("ASD") and Golden Panda Ad Builder ("GP"). Alternatively, they appear to seek return of the seized funds to ASD and GP so that those entities can continue to operate and fulfill contractual obligations they had with their members to provide free advertising, to pay referral commissions, and to rebate 125% of each member's fees. No former ASD or GP members

---

[1] According to the Court's docket, third-party efforts to intervene appear to have commenced in about November 2008. Several submissions, now docketed as Motions to Intervene, are numbered as documents 43, 44, 45 and 46. The Government alleges that the frauds in this case impacted over 100,000 individuals; thus, it is likely that other former members and victims will also seek to intervene. This challenge to the current intervenors' constitutional and prudential "standing" would apply to all such other former members and victims, too.

Dockets.Justia.com

should be permitted to intervene in this case, neither those who assert that they were victims of the ASD or GP frauds, nor those concerned with protecting a right, that does not exist, to contract for passive income with a "Ponzi" operation.

## BACKGROUND/SUMMARY OF ARGUMENT

ASD and GP were two investment programs that operated, ostensibly, as auto-surf advertising companies promising to return to the "advertisers" 125% of each "purchase" at a rate of about 1% per day.  In reality, the operators of the auto-surf  programs were using money paid to them by later investors to underwrite the returns promised to earlier investors.  Consistent with a classic "Ponzi" scheme, earlier investors, and the operators and other compensated promoters, were enriched at the expense of later investors who were not told that these auto-surf operations lacked sufficient independent revenue to support the promised returns.  After the Government secured warrants to seize property constituting or traceable to proceeds of these wire fraud schemes, it sued to forfeit the proceeds.

Recently, several individuals, who appear to allege either that they were victims of one or both of the auto-surf frauds, or victims of the Government's interference with their investment program, filed papers seeking to intervene in this federal forfeiture case.  Apparently, these fraud victims want this Court to return directly to them some portion of the funds they paid over to ASD or GP before those operations ceased.  All efforts by these fraud victims to intervene in this case should be denied.  It is not clear that each of these would-be intervenors satisfied their "statutory standing" obligation by properly filing a timely, verified claim to some of the defendant property.  But, more importantly, because a federal civil forfeiture case is an action *in rem* against specific assets, all persons who seek to intervene (asking for relief different from

what the Government, as plaintiff, requests) must, like all others who seek relief from a federal court, satisfy the constitutional standing requirement of Article III. To have constitutional standing to intervene in a forfeiture case as a claimant – to satisfy the case-or-controversy requirement of Article III of the Constitution – a "claimant" must have a legally cognizable interest in at least one of the specific assets subjected to forfeiture. None of the would-be intervenors has such an interest.

Fraud victims who voluntarily transfer their property to their wrongdoers do not retain a legal interest in their property; instead, such victims acquire a debt against their wrongdoers. Thus, it has long been held that, like unsecured creditors, fraud victims lack standing to intervene in forfeiture proceedings. Although such victims may have been injured by the same wrongdoers whose property it is that the Government seeks to forfeit, these victims lack a specific (perfected) legal interest in the particular assets of their wrongdoers – even if the victims can trace their former property to their wrongdoers' assets.

This is not to say that these "Ponzi" victims have no recourse. Under the Civil Asset Forfeiture Reform Act ("CAFRA"), the Government may use the forfeiture laws to recover property for the benefit of crime victims. Specifically, once the property is forfeited, the Attorney General has the authority under 18 U.S.C. § 981(e)(6) to restore the property "to any victim of the offense giving rise to the forfeiture." Congress gave the Executive Branch sole discretionary authority to restore forfeited property to victims pursuant to duly promulgated regulations, and that decision was sound. Congress understood that crime victims generally lack the resources – collectively and individually – to use the judicial process to recover the proceeds of the crimes perpetrated upon them. The restitution provisions of the criminal laws allow the

courts to order a defendant to pay restitution to his victims once he has been convicted. But the restitution laws do not give the court or the Government the authority to seize or restrain property pretrial, to repatriate it from other countries, or to recover, preserve, and distribute money in cases where a criminal cannot, for whatever reason, be brought to justice, in a criminal case, before criminal proceeds disappear. Hence, the Department of Justice frequently uses the asset forfeiture laws to recover, and then forfeit, a wrongdoer's property for the benefit of victims. The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") clarified and substantially increased the Government's authority to do so in civil forfeiture cases. CAFRA included an amendment to 18 U.S.C. § 981(e)(6): "Notwithstanding any other provision of law, . . . the Attorney General . . . is authorized . . . to transfer [forfeited property] as restoration to any victim of the offense giving rise to the forfeiture." The Attorney General exercises that authority in countless civil and criminal forfeiture matters pursuant to duly promulgated regulations. Those rules ensure an orderly process that treats all victims of the crime fairly, without requiring any victim to retain counsel or to incur other expenses that would deplete the pool of funds available for distribution. See 28 C.F.R. § 9.

Moreover, instead of attempting to resolve claims they may have against a wrongdoer by seeking to intervene in forfeiture proceedings the Government initiates, sound public policy regarding the administration of justice and the purposes of the forfeiture statutes dictates that creditors look to the post-forfeiture remission process for their relief. The essence of a forfeiture lawsuit is to transfer title to property from a wrongdoer to the Government, not to resolve damage claims between wrongdoers and third-parties. Third-parties enter into the forfeiture picture only as necessary to see that no existing rights in particular property are inadvertently

infringed in the course of taking specific assets from wrongdoers. Congress did not intend to transfer the litigation of civil causes between a wrongdoer and his creditors to the forfeiture arena, and it most certainly could not have intended to transform a forfeiture proceeding into a liquidation in which all of the assets of an insolvent wrongdoer are distributed. As the D.C. Circuit acknowledged while resolving the BCCI forfeiture litigation, that is a task for the bankruptcy courts, not district courts adjudicating forfeiture matters.[2] See United States v. BCCI Holdings (Luxembourg), 46 F.3d 1185, 1191-92 (D.C. Cir. 1995).

If persons with civil causes of action against wrongdoers had the right to litigate their claims in forfeiture proceedings, forfeiture cases would become forums for general civil litigation of all manner of claims involving wrongdoers. Forfeiture would cease to be an effective tool of federal law enforcement; federal prosecutors would, in every case, have to weigh the benefits of pursuing assets and seeking their forfeiture against the prospect of being dragged into potentially

---

[2] The Court of Appeals for the District of Columbia Circuit squarely rejected the notion that unsecured creditors have standing to contest a forfeiture under a constructive trust theory when the result would be to turn the forfeiture case into a liquidation.

> We think the government is correct that a general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant. That result appears patently at odds with the statutory scheme, which directs parties without an interest in specific property to seek relief from the Attorney General, not the court adjudging the forfeiture. The Attorney General has authority to dispense confiscated funds "to protect the rights of innocent persons," 18 U.S.C. § 1963(g)(1), and general creditors seem precisely the type of innocent persons Congress had in mind.

United States v. BCCI Holdings (Luxembourg), 46 F.3d 1185, 1191-92 (D.C. Cir. 1995).

unlimited civil litigation over torts, contracts, and other theories of liability beyond the ken of federal law enforcement. Moreover, the pool of assets available for distribution to the victims would be depleted by the attorneys fees unnecessarily incurred in expanded judicial proceedings. Finally, its diligent work in pursuing and secure assets for forfeiture, the Government might be liable for the attorney's fees of victims who succeeded in convincing courts to order that assets not be forfeited, but instead released to their clients.

These considerations apply directly to this case and scores of others like it. If unsecured creditors can file claims in the district courts, forfeiture proceedings will compete with the remission process as the forum of choice for the wrongdoer's victims and creditors. In such cases, the district courts would have to decide which claims have priority over others, and what *pro rata* share should be distributed. This is inescapable, because in most cases the wrongdoer's debts greatly exceed the value of the property available for forfeiture. This should remain the task of a liquidator in the remission process; it is not the task Congress meant to assign to the court handling a case filed by the Department of Justice as a law enforcement action to disgorge wrongdoers of the proceeds of their fraud.[3]

---

[3] Indeed, in <u>United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)</u>, 69 F. Supp.2d 36 (D.D.C. 1999), the Government forfeited $1.2 billion in property and turned it over to a receiver to distribute on a *pro rata* basis to thousands of victims in 72 countries once the forfeiture order was final. This occurred, however, only after the Government successfully litigated, for seven years, the standing of 170 victims to contest the forfeiture as unsecured creditors and beneficiaries of a constructive trust. In the end, the district court issued over 50 opinions denying virtually all of the claims on standing grounds before the Government was able to remit the forfeited funds to the victims.

## PROCEDURAL HISTORY

The Government brought this civil forfeiture Complaint on August 5, 2008. On August 15, 2008, the Court docketed a pleading styling itself as containing verified claims by: (1) Bowdoin/Harris Enterprises, Inc.; (2) Adsurf Daily, Inc.; and (3) Mr. Thomas A. Bowdoin, Jr. ("claimants"). The same counsel filed the pleading attaching all three claims.

On August 18, 2008, claimants filed an "Emergency Motion For Return Of Seized Funds . . . And Motion To Dismiss" by which claimants asked the Court to release some of the funds agents seized from Thomas Bowdoin's bank accounts because, his attorneys alleged, without "emergency relief[,] the company will soon collapse completely." The Government opposed the return of the seized funds. In its opposition, the Government noted that the statutory basis for pretrial release of property sued for forfeiture specifically excepted currency and similar monetary instruments, the very property that was sued here. Nevertheless, the Government did not oppose the request for an evidentiary hearing that claimants had requested as part of their emergency motion.

On August 22, 2008, the Court docketed a pleading containing verified claims by Golden Panda Ad Builder and Clarence Busby, Jr. One month later, on September 22, 2008, Golden Panda Ad Builder and Clarence Busby, Jr. decided to dissolve the Golden Panda Corporation and filed a motion to dismiss their claims. The next day, the Court granted the motion and dismissed the verified complaints of Golden Panda Ad Builder and Clarence Busby, Jr.

Beginning September 30, the Court held a two-day evidentiary hearing for the remaining claimants. Prior to the hearing, however, claimants' counsel indicated that neither claimant Bowdoin, nor ASD's Chief Executive Officer Juan Hernandez, would testify at the hearing.

7

Instead, both men, through their counsel, invoked their right under the Constitution's Fifth Amendment not to incriminate themselves. At the evidentiary hearing, claimants offered testimony from (1) Robert Grayson, an ASD member, (2) Gerald P. Nehra, an attorney hired by claimants' counsel to challenge some of the Government's allegations, (3) Chuck Osmin, a customer service representative employed by ASD, and (4) Philip Schwartz, an attorney employed with the law firm representing claimants at the hearing. Additionally, both parties submitted several exhibits and proposed findings of fact and conclusions of law.

On November 19, 2008, the Court issued its opinion denying all of the claimants' motions. The Court found that it "lack[ed] legal authority under 18 U.S.C. § 981(f) to order release of the seized funds and that ASD... failed to demonstrate that its assets are not proceeds derived from unlawful activity." The Court further found that "ASD's evidence failed to demonstrate that it operates a legitimate business, and not an illegal Ponzi scheme." Finally, the Court held "that the motion to dismiss [was] without merit."

Shortly after the Court's ruling, on January 13, 2009, the remaining claimants', through counsel, withdrew their claims to the seized property and consented to forfeiture. On January 22, 2009, the Court granted the claimants' request and deemed all claims withdrawn. Recently however, on February 27, Thomas A. Bowdoin, Jr., apparently proceeding *pro se*, filed a Notice of Rescission and Withdrawal of Release of Claims to Seized Property and Consent to Forfeiture. That same day, Bowdoin filed a Motion to Exclude and Suppress Evidence, a Motion to Set Aside Forfeiture, and a Motion to Dismiss Due to Lack of Advance Fair Notice. The Government has not yet responded to those motions.

Meanwhile, several individuals or entities have filed papers by which they seek to

intervene in this forfeiture case. These intervention efforts appear to have commenced in about November 2008, and appear to involve former members of ASD or GP who assert that they were victims of the auto-surf Ponzi operation (or victims of the Government's seizure of funds from the operations' accounts before members were repaid). Several Motions to Intervene, numbered as documents 43, 44, 45 and 46, have recently been docketed.

For the reasons discussion herein, efforts by fraud victims to intervene in this case (and related civil forfeiture cases) should be denied.

<div align="center">**ARGUMENT**</div>

**I.    VICTIMS OF THE ASD/GP FRAUDS LACK CONSTITUTIONAL STANDING TO CHALLENGE THE GOVERNMENT'S FORFEITURE CASE BECAUSE THEY CANNOT ESTABLISH AN OWNERSHIP INTEREST IN, OR POSSESSORY RIGHT TO, THE SPECIFIC ASSETS SUED HERE FOR FORFEITURE.**

Civil forfeiture is an *in rem* proceeding filed against particular property. Although the defendant in all such cases is specifically identified property, inanimate property cannot "defend" itself. Instead, those persons who have an interest in the specific defendant property, and who intend to challenge the civil complaint's allegations of forfeitability, must come forward to properly intervene in the *in rem* proceeding. "Civil forfeiture actions are brought against property, not people. The owner of the property may intervene to protect his interest." United States v. All Funds in Accounts (Banco Espanol de Credito), 295 F.3d 23, 25 (D.C. Cir. 2002). "Because civil forfeiture is an *in rem* proceeding, the property subject to forfeiture is the defendant. Thus defenses against the forfeiture can be brought only by third parties, who must intervene." United States v. One-Sixth Share of James J. Bulger in [Lottery Proceeds], 326 F.3d 36, 40 (1st Cir. 2003).

Outside the forfeiture realm, it usually is the defendant who raises and seeks to dismiss a federal lawsuit against it for want of standing.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Because 28 U.S.C. §§ 1345 and 1355(a) give the district courts the jurisdiction to hear any civil forfeiture actions commenced in the district courts by the United States under federal law, however, the Government's standing to litigate as the plaintiff in such cases is unassailable.  But, no other person or party has authority to initiate a forfeiture case or to request that property sued in such a case be forfeited to it, under the federal forfeiture laws, rather than to the Government.  No party may stand in the Government's shoes as the plaintiff:  the forfeiture laws include no provision for relator standing or the assignment of the Government's claim to another.[4]  Rather, only those seeking to oppose forfeiture may intervene.  In other words, those who would prefer to have property forfeited, not from the wrongdoer to the Government, but from a wrongdoer to them, lack standing to intervene.

A.    **Statutory Standing**

Consistent with this understanding that third-party intervention in an *in rem* forfeiture proceeding is limited, Congress has required a would-be intervenor to establish, by filing a timely verified claim to some or all of the defendant property, that the claimant affirm an interest in some portion of, or all of the particular defendant property sufficient to challenge the Government's forfeiture complaint.  See e.g., Supplemental Rule G(5) ("A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending.  The claim must:  (A) identify the specific property claimed; . . . state the

---

[4]  Cf. Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 773-774 (2000) (upholding constitutional standing for *qui tam* relator as partial assignee of Government's damages claim).

claimant's interest in the property [and] be signed by the claimant under penalty of perjury[.]" (emphasis added).  The intervenor's obligation to file a verified claim, which is codified at 18 U.S.C. § 983(a)(4)(A), is commonly termed the "statutory standing" requirement.  The purposes of a timely, verified claim are two-fold:  (1) imposing a time frame ensures that cases are resolved without needless delay;[5] and (2) imposing a verification requirement provides some protection against the filing of false claims.[6]

The statutory standing rules for the timely filing of claims in civil *in rem* forfeiture actions are to be strictly construed, and it is not clear that movants in this case filed timely, verified claims (or that they identified sufficient grounds for extending their claim period). Regardless, uniformly in this case, all of the participants and victims of these "Ponzi" operations, except those who also owned the operations, lack constitutional standing to intervene in this case

---

[5]  United States v. 16614 Cayuga Road, 69 Fed. Appx. 915, 921 (10th Cir. 2003) (deadline is "to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay."); see United States v. $230,963.88 in U.S. Currency, 2000 WL 1745130, at 3-4 (D.N.H. Nov. 16, 2000) (time limits exist to force claimant to come forward as soon as possible after forfeiture proceedings have begun and to prevent false claims; therefore they are strictly enforced; ignorance of time limits is not "excusable neglect").

[6]  As the Sixth Circuit has noted:  "Verification forces the claimant to place himself at risk of perjury for a false claim. Therefore, the Government's insistence on a verified claim is not . . . form over substance."  United States v. 35 Firearms, 123 Fed. Appx. 204 186 (6th Cir. 2005). Accord United States v. $125,938.62, 370 F.3d 1325, 1328 (11th Cir. 2004) (a verified claim is essential to conferring statutory standing and is necessary to deter filing of false claims; claim must be verified by claimant, not counsel); United States v. Commodity Account No. 54954930 at Saul Stone & Co., 219 F.3d 595, 597 (7th Cir. 2000) (verification forces claimant to place himself at risk of perjury for false claims); United States v. $138,381 in U.S. Currency, 240 F. Supp.2d 220, 226 (E.D.N.Y. 2003) (dismissing unverified claim "because there is a substantial danger of false claims in forfeiture proceedings, verification on oath or affirmation is an essential element of a claim under Rule C(6)").  But see United States v. $4,629.00 in U.S. Currency, 359 F. Supp.2d 504, 507 (W.D. Va. 2005) (*pro se* claimant substantially complies with verification requirement in Rule C(6) when he files a signed but unverified claim).

– regardless of whether their present or future submissions would satisfy the statutory standing requirements for intervention that Congress imposed. As discussed below, the victims of these fraud schemes lack constitutional standing to contest the Government's forfeiture case.

## B.     Constitutional (Article III) Standing

In addition to complying with the statutory standing prerequisites, every prospective intervenor in a federal judicial proceeding must satisfy the standing requirement that Article III of the United States Constitution imposes *on all federal court litigation*. Constitutional standing, commonly known as "case or controversy" standing, "is a threshold question in every civil forfeiture case because it determines the jurisdiction of the court to consider the claimant's claim." Cassella, Stefan D., *Asset Forfeiture in the United States: A Treatise on Forfeiture Law*, § 10-3, at 7 (2006).[7] In the context of a civil forfeiture case, constitutional standing generally requires a claimant to establish that he or she has valid ownership or possessory interest in the property subject to forfeiture that entitles him or her to defend some portion of the property against its forfeiture.[8]

In short, every person who seeks to intervene in a forfeiture case must establish that he or

---

[7] See also United States v. Lazarenko, 476 F.3d 642, 649 (9th Cir. 2007) (claimant must show actual or imminent injury – not hypothetical, conjectural, or abstract injury in order to establish standing) (citations omitted); Real Property Located at 148 Maunalanikai Place, 2008 WL 3166799 at *5 (following Lazarenko); United States v. Cambio Exacto, S.A., 166 F.3d 522, 527 (2nd. Cir. 1999) (injury remains at heart of standing question.); United States v. $114,031.00 in U.S. Currency, 284 Fed. Appx. 754, 756 (11th Cir. 2008) (unpublished) (claimant must demonstrate existence of injury by establishing either an ownership or lesser possessory interest in the property).

[8] The standard for determining standing to contest a forfeiture in a civil forfeiture case is the same as it is in the ancillary proceeding in a criminal forfeiture case. See United States v. Weiss, 467 F.3d 1300 (11th Cir. 2006) (applying same rules governing standing in ancillary proceeding as apply in civil forfeiture cases).

she has both "statutory standing" and "Article III standing" (case-or-controversy standing).  See

United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007).  "The term

'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory

requirements Congress has imposed for contesting a civil forfeiture action in federal court, while

'Article III standing' relates to the claimant's ability to show that he has a sufficient interest in

the property to satisfy the case-or-controversy requirement of Article III of the Constitution."

Cassella, Stefan D., *Asset Forfeiture in the United States:  A Treatise on Forfeiture Law*, § 9-4,

at 22-23 (2006).

It is well-established that a person does not have Article III standing to litigate against the

Government in a forfeiture proceeding unless he or she has a cognizable legal interest *in the

particular assets subject to forfeiture.*[9]  In other words, it is not enough to assert a generalized

legal interest in the estate of the person from whom those assets have been seized.  Unsecured

creditors lack any interest in a debtor's particular assets; they have only a generalized interest in

the debtor's estate.  Thus, the federal courts uniformly hold that unsecured creditors do not have

---

[9] See United States v. Real Property Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004) (in a civil forfeiture case, claimant's Article III standing "turns upon whether the claimant has a sufficient interest in the property to create a case or controversy"); United States v. $9,041,598.68, 163 F.3d 238, 245 (5th Cir. 1998) (claimant has burden of establishing standing; he must have a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement"); United States v. $38,000.00 in United States Currency, 816 F.2d 1538, 1543 n.12 (11th Cir.1987) ("although the government bears the initial burden of proving probable cause [pre-CAFRA], it does not bear that burden with respect to a given claimant unless the claimant makes a valid claim that he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government"); United States v. Real Property Located at 5201 Woodlake Dr., 895 F. Supp. 791, 793 (M.D.N.C.1995) ("in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts") (quoting $38,000.00 in United States Currency).

Article III standing to contest the civil forfeiture of a debtor's particular property.[10]  The same

rule applies in criminal forfeiture cases when third parties seek to contest the forfeiture of the

defendant's assets on the ground that they have a legal interest in the forfeited property.[11]

---

[10]  See United States v. One-Sixth Share of James J. Bulger in [Lottery Proceeds], 326
F.3d 36, 44 (1st Cir. 2003) (person with an *in personam* judgment against property owner has no
secured interest in any particular asset and lacks standing to contest forfeiture of specific
property); United States v. Carrel, 252 F.3d 1193, 1207 n.2 (11th Cir. 2001) (woman contesting
forfeiture on ground that property owner owes her child support payments lacks standing because
she is not an owner); United States v. Cambio Exacto, S.A., 166 F.3d 522, 529 (2d Cir. 1999)
(entity to whom a money transmitter owes money lacks standing as a general creditor to contest
forfeiture of money transmitter's account because there is no injury that would be redressed by
successful challenge to forfeiture); United States v. $20,193.39 U.S. Currency, 16 F.3d 344 (9th
Cir. 1994) ("Unlike secured creditors, general creditors cannot claim an interest in any particular
asset that makes up the debtor's estate.  For this reason, the federal courts have consistently held
that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors'
property."); United States v. $61,483.00 in U.S. Currency, 2003 WL 1566553, at *2 (W.D. Tex.
Feb. 18, 2003) (notwithstanding his claim of ownership, claimant lacked standing because he
was an unsecured creditor; United States v. $124,906 in U.S. Currency, 2000 WL 360086, at *2
(D. Or. 2000) ("unsecured creditors do not have standing to challenge the civil forfeiture of their
debtor's property"); United States v. $15,060 in U.S. Currency, 1999 WL 166847, at *2 (D. Or.
1999) (claimant who allegedly loaned money to defendant not knowing defendant intended to use
it to facilitate drug-trafficking was an unsecured creditor with no legal standing to contest
forfeiture of seized funds).  In fact, Congress codified this well-settled principle in the innocent
owner provision that it enacted as part of the Civil Asset Forfeiture Reform Act of 2000
("CAFRA"), *see* 18 U.S.C. § 983(d)(6)(B)(i) ("the term 'owner' does not include (i) a person
with only a general unsecured interest in, or claim against, the property or estate of another...").

[11]  See United States v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997) (person holding
check drawn on defendant's forfeited bank account is a general unsecured creditor with no
interest in specific funds; creditor lacked standing to contest forfeiture of defendant's funds);
United States v. BCCI Holdings (Luxembourg) S.A. (Petition of OAS), 73 F.3d 403, 405 (D.C.
Cir. 1996) (depositor, Organization of American States, was entitled to no special status in
ancillary proceeding despite treaty obligations of the United States respecting its property
because it was only a general creditor and therefore, it was defendant's property – not claimant's
– that was criminally forfeited); United States v. BCCI Holdings (Luxembourg) S.A. (Petition of
Chawla), 46 F.3d 1185, 1191-92 (D.C. Cir. 1995) (bank depositors are unsecured creditors
lacking a legal interest in bank's forfeited funds); United States v. Schwimmer, 968 F.2d 1570,
1581 (2d Cir. 1992) (unsecured creditors lack standing to contest criminal forfeiture in ancillary
proceeding); United States v. McCorkle, 143 F. Supp.2d 1311, 1319-20 (M.D. Fla. 2001) ("a
general creditor has no vested or superior interest in particular assets forfeited unless he not only

Before they have sued their wrongdoers and perfect judgments against them, victims are merely potential creditors. Because they have no secured interest in particulars assets sued in federal civil forfeiture cases, or indicted in federal criminal forfeiture cases, federal courts have recognized that victims, like unsecured credits, lack constitutional standing to intervene in such actions. See United States v. $3,000 in Cash, 906 F. Supp. 1061, 1065 (E.D. Va. 1995) (even though claimant/victim could trace his money to seized bank account, title passed to perpetrator, making claimant an unsecured creditor without standing). The same standing rule applies in the ancillary proceeding in criminal forfeiture cases. See United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement), 69 F. Supp.2d 36, 59 (D.D.C. 1999) (person who voluntarily transfers his property to defendant is no longer owner of that property; his ability to trace his property to defendant's assets is irrelevant; therefore, victims who transferred their property to defendant are merely unsecured creditors, not owners of forfeited property); see also United States v. One-Sixth Share, 326 F.3d 36, 45 (1st Cir. 2003) (family of murder victim has no standing to contest forfeiture of defendant's property as general

_____

has secured a judgment against the debtor, but also has perfected a lien against a particular item"); United States v. Strube, 58 F. Supp.2d 576, 581-82 (M.D. Pa. 1999) (family members who obtained a judgment lien against defendant personally were general creditors and not *bona fide* purchasers of any interest in a specific parcel of property); United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Banca Nazionale Del Lavoro), 977 F. Supp. 449, 454 (D.D.C. 1997) ("nostro" account of another bank is a general deposit entitled to no special status in ancillary proceeding; depositor is a general creditor); United States v. BCCI Holdings (Luxembourg) S.A. (Petitions of General Creditors), 919 F. Supp. 31, 36 (D.D.C. 1996) (rejecting for lack of standing claims based on breach of contract, letter of credit, bank deposit, and employer/employee relationship); id. 814 F. Supp. 106 (D.D.C. 1993) (bank depositors); id. 833 F. Supp. 17 (D.D.C. 1993) (same); id. 833 F. Supp. 9 (D.D.C. 1993) (depositors' class action); id. 833 F. Supp. 22 (D.D.C. 1993) (trade creditors); id. (Petition of Scarfone), 841 F. Supp. 1 (D.D.C. 1993) (breach of contract). But see United States v. Reckmeyer, 836 F.2d 200, 205-06 (4th Cir. 1987) (recognizing limited exception to rule that general creditors lack standing in criminal forfeiture case where defendant's entire estate had been forfeited).

creditor victim; "Congress has provided for justice a different way: it has provided that the Government, which stands for all the citizens, may take the criminal's property by forfeiture, and it has limited those who may assert competing claims"; but victims can petition the Attorney General for remission).[12]

In this case, all of the defendant property that the Government has sued was owned by ASD and GP, or the operators of these entities. All of the funds sued here came either from (1) bank accounts controlled by the entities or their operators, into which were deposited the funds that members freely gave to ASD or GP, either through direct deposit, or by cash or by check, or the offices of the operations. "Members" gave their property to the ASD and GP operators, passing title to the funds, because they bought advertising, because they believed they were investing with brilliant men who had developed a novel and sustainable business model, or because, in the words of one of the former operators, because members agreed that "if you . . . make good returns on your rebates and the activities that you're a part of . . . you won't really care who runs this program." <u>See</u> Complaint ¶ 47. In all cases, however, title to the property passed to the operators or their operations and, if the Government's allegations prove true, to the Government – under the relation-back doctrine. Former members, like unsecured creditors, lack constitutional standing to contest the forfeiture of others' assets.

---

[12] Consistent with the universally-held view that unsecured creditor-victims lack standing to contest the forfeiture of another person's property is case law holding that the Government is not required to send notice of forfeiture proceedings to victims and other persons who lack standing to contest the forfeiture. <u>See</u> <u>United States v. Phillips</u>, 185 F.3d 183, 187 (4th Cir. 1999) (in criminal forfeiture cases, Government does not have to send notice to persons who lacked standing to contest forfeiture).

## II.  IN THIS CASE THE COURT SHOULD REJECT THE "CONSTRUCTIVE TRUST" THEORY THAT MIGHT, ON DIFFERENT FACTS, PROPERLY SUPPORT A CLAIMANT'S CONSTITUTIONAL STANDING.

To circumvent the well-established rule regarding unsecured creditors' lack of Article III standing to contest federal forfeiture cases, victims have sometimes sought to characterize themselves not as unsecured creditors, but as "owners" of a wrongdoer's fraud proceeds as beneficiaries of constructive trusts.  This effort usually fails, and in cases like this – where victims of a fraud may want to intervene to challenge forfeiture of proceeds of the very same fraud – always should fail.  Accepting such a theory in this case would require this Court to ignore the temporal rule of ownership transfer in federal forfeiture cases, the so-called "relation-back doctrine," which Congress codified at 18 U.S.C. § 981(f).  It also would require this Court to ignore the D.C. Circuit's seminal opinions resolving the BCCI litigation, which explicitly rejected efforts by third-parties to intervene in a forfeiture proceeding through the device of a constructive trust.  Moreover, the decision whether to impose a constructive trust lies in equity; but, the facts in multi-victim fraud forfeiture cases rarely, if ever, will warrant imposition of a constructive trust in favor of only some victims – doing so would be inequitable.  Lastly, Congress determined that post-forfeiture restitution to victims be accomplished through the Attorney General's remission process:  considerations of prudential standing also dictate rejecting this intervention theory *de jour*.

A. **Because Victims of the Same Offense Giving Rise to the Government's Forfeiture Case Can Never Show That Their Interest in Proceeds Vested, Through Imposition of a Constructive Trust, <u>Before</u> the Government's Interest in the Proceeds Vested, by Operation of Federal Law, Efforts to Have Federal Courts Construct Trusts in Such Cases Should Always Be Rejected.**

Under the relation-back doctrine, all right, title, and interest in property subject to forfeiture vests in the United States "upon the commission of the act giving rise to forfeiture."[13] The two categories of innocent owners described in the innocent-owner provisions of the civil forfeiture statutes, §§ 983(d)(2) and (3), complement the relation-back doctrine by providing a more or less absolute defense to the forfeiture for any innocent party whose interest <u>vested before</u> that of the Government. Those who acquired their interests afterwards, however, must be *bona fide* purchasers for value. See <u>United States v. Nava</u>, 404 F.3d 1119, 1129 (9th Cir. 2005) (applying parallel provisions in criminal forfeiture statute (21 U.S.C. § 853(n)(6)(A) and (B)); because Government interest in property vested at time of offense giving rise to forfeiture under relation-back doctrine, claimant can recover under § 853(n)(6)(A) only if her interest vested before that time); <u>United States v. Hooper</u>, 229 F.3d 818, 821 (9th Cir. 2000) (temporal requirement in § 853(n)(6)(A), requiring claimant to show that the property interest was vested at time acts giving rise to forfeiture were committed, is complement to relation-back doctrine); <u>United States v. BCCI Holdings (Luxembourg) S.A. (Final Order of Forfeiture and Disbursement)</u>, 69 F. Supp.2d 36, 60 (D.D.C. 1999) (sections 853(n)(6)(A) and (B) are the procedural complements to relation-back doctrine); <u>United States v. McClung</u>, 6 F. Supp.2d 548,

---

[13]  The relation-back doctrine is codified in several places, including for most civil forfeiture cases at 18 U.S.C. § 981(f), for RICO cases at 18 U.S.C. § 1963(c), for controlled substance trafficking cases at 21 U.S.C. § 853(c), and, for most other criminal forfeiture cases at 18 U.S.C. § 982(b)(1) (through incorporation of 21 U.S.C. § 853).

552 (W.D. Va. 1998) (under relation-back doctrine, Government's interest in property involved in drug conspiracy vests when conspiracy begins; therefore, to prevail under § 853(n)(6)(A), claimant must show that his interest was superior at that time).

Because the relation-back doctrine vests the Government's interest in forfeitable property at the time of the act giving rise to the forfeiture, the only way third-parties can establish a superior interest in forfeitable property – *i.e.,* the only way they can show that their interest vested *before* the Government's interest vested by operation of the federal law – is to show that their interest vested *before* the crime giving rise to the forfeiture. But, victims of <u>the same offense that gives rise to the forfeiture</u> case should never be able to show in that same case that their interest in their wrongdoer's assets vested <u>before</u> the Government's interest arose. A constructive trust, as further discussed herein, is an equitable remedy that creates a legal interest where none existed before. Because these victims' interest as beneficiaries of a constructive trust would not exist until the forfeiture court imposed the trust, these beneficiaries should never prevail over the Government's interest in a forfeiture case. Victims of the offense that supports federal forfeiture can never show that their interest pre-dated vesting of the Government's interest under the relation-back doctrine.

The seminal cases explaining why district courts should not impose constructive trusts in favor of third parties who allege that, as victims of wrongdoer, they should be deemed owners of the wrongdoer's forfeitable property, arose from litigation the Government filed in the District of Columbia. In the litigation surrounding the former Bank of Credit and Commerce International ("BCCI") the D.C. Circuit agreed with this Court's determination that district courts should not impose constructive trusts where they would conflict with federal forfeiture law.

In United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Chawla), 46 F.3d 1185 (D.C. Cir. 1995), cert denied, Chawala v. United States, 515 U.S. 1160 (1995), the Court of Appeals addressed the propriety of imposing a constructive trust as a basis for establishing that a creditor "owned" property for purposes of challenging its forfeiture. In BCCI Holdings, a Sierra Leone court-appointed conservator alleged that depositors at a BCCI Sierra Leone bank-branch were entitled to a constructive trust over $2 million held in that bank's name at a New York bank. In so doing, the conservator sought to avoid the pooling of funds in BCCI Sierra Leone's account with other funds, which would cause its depositors to join a much larger pool of potential victims. Id. at 1188. Despite the funds being held in an account of BCCI Sierra Leone, the D.C. Circuit rejected the claimants' constructive trust theory as a basis for standing (as an innocent owner) to oppose the forfeiture. In so doing, the D.C. Circuit recognized that imposition of a constructive trust would conflict with the relation-back doctrine of federal forfeiture law and interfere with other provisions by which Congress intended victims to be compensated.

BCCI Holdings recognized that the Government's interest in forfeitable property vests at the time of the criminal acts giving rise to its forfeiture. Id. at 1191. The D.C. Circuit held that a "constructive trust is a *remedy* that a court devises after litigation . . . [that] could not have been shown to exist at the time the acts were committed." Id. at 1190-91. Because ownership under a constructive trust would not predate the automatic transfer of title to the Government under the relation-back doctrine, these claimants' effort to impose a trust, if permitted, would have abrogated the federal law. The D.C. Circuit held that in § 1963(c), Congress devised a statutory remedial scheme that reaches back to the time of the criminal acts to forfeit the property to the

United States," and it was "not open to a court to fashion another remedy (a competing fiction) that also reaches back to snatch the property away from the United States . . ." Id. at 1191.

The D.C. Circuit also squarely rejected the notion that unsecured creditors have standing to contest a forfeiture under a constructive trust theory when the result would be to turn the forfeiture case into a liquidation.  It wrote:

> We think the government is correct that a general creditor can never have an
> interest in specific forfeited property, no matter what the relative size of his claim
> vis-a-vis the value of the defendant's post-forfeiture estate.  Were it otherwise, the
> court litigating the forfeiture issue would be converted into a bankruptcy court and
> would not be able to grant forfeiture to the government until it determined that no
> general creditor would be unable to satisfy its claim against the defendant. That
> result appears patently at odds with the statutory scheme, which directs parties
> without an interest in specific property to seek relief from the Attorney General,
> not the court adjudging the forfeiture. The Attorney General has authority to
> dispense confiscated funds "to protect the rights of innocent persons," 18 U.S.C. §
> 1963(g)(1), and general creditors seem precisely the type of innocent persons
> Congress had in mind.

Id. at 1191-92.

Even were a district court to conclude, as it sought to resolve issues raised in a pending forfeiture case, that a constructive trust was created not by the court (upon request from a victim), but by operation of a state's law when a fraud occurred, the result should be the same.  Where the same fraud that supports the federal forfeiture is used to support a victim's constructive trust, the property interest of the victim still would not be superior to (by predating) the Government's property interest under the relation-back doctrine.  In other words, given the existence of the federal relation-back statutes, it should not matter whether the property interest arising from a constructive trust is considered to exist only after the district court decides to imposed one, or, by operation of a state's law, *nunc pro tunc*, to when the beneficiary-victim was defrauded.  In its

BCCI litigation, the D.C. Circuit had decided there was no apparent "tie" in the vesting of ownership because it concluded that a constructive trust exists only after a court, sitting in equity, imposes one.  Other circuit's cases have addressed situations where retroactive application of a constructive trust also would conflict with the federal relation-back doctrine.  Where the courts have addressed this issue, they have given federal law its intended effect by holding that the relation-back doctrine demands that, for third-parties to prevail, they must prove their ownership, whether by imposition of a retroactive constructive trust, or some other state law, vested <u>before</u> the relation-back doctrine kicked in.  <u>See</u> <u>United States v. Hooper</u>, 229 F.3d 818, 821 (9th Cir. 2000); <u>United States v. Chavez</u>, 323 F.3d 1216, 1218-19 (9th Cir. 2003) (following <u>Hooper</u>; claimant must have a *preexisting* interest in order to prevail under section 853(n)(6)(A); an interest that arises under a contingency agreement at precise moment that property becomes subject to forfeiture is not sufficient); <u>United States v. Totaro</u>, 345 F.3d 989, 999 (8th Cir. 2003) (under section 1963(l)(6)(A), defendant's wife may recover only what interest she had in marital property as a matter of state law *before* defendant committed offense and began using criminal proceeds to pay off mortgage and make improvements).[14]

In <u>Ridgway v. Ridgway</u>, 454 U.S. 46, 102 S. Ct. 49, 60-61 (1981), the Supreme Court held that when the effect of state law imposing a constructive trust would be to divert funds from a use intended by an applicable federal statute, the Supremacy Clause precludes the constructive trust from being imposed under state law.  In light of the Supremacy Clause, and statutes codifying the relation-back doctrine, intervenors requesting constructive trusts ought to be

---

[14]  <u>But</u> <u>see</u> <u>United States v. $4,224,958.57 (Boylan)</u>, 392 F.3d 1002 (9th Cir. 2004) (accepting constructive trust theory); <u>United States v. Shefton</u>, 548 F.3d 1360 (11th Cir. 2008) (accepting constructive trust theory).  <u>Boylan</u> and <u>Shelton</u> are discussed in part C.

required to demonstrate that, by operation of their constructive trusts, their interest in some forfeitable property will have vested before the property became forfeitable. Otherwise, victims' requests for imposition of constructive trusts in forfeiture cases are nothing more than improper requests for advisory opinions.

<blockquote>

**B.** **Constructing a Trust as a Theory to Support a Victim's Standing in a Multi-victim Federal Forfeiture Case Would Be Inequitable Even If the Relation-Back Doctrine Did Not Render Such a Creation Irrelevant.**

</blockquote>

Federal courts generally recognize that a constructive trust may be imposed only if the claimant satisfies at least six conjunctive requirements: (1) the person asserting a constructive trust must be able to trace his interest to the property subject to forfeiture;[15] (2) the claimant must have "clean hands;"[16] (3) there must be a confidential or fiduciary relationship between the third party and the defendant, such as exists between family members;[17] (4) the claimant must lack an

---

[15] See United States v. Schwimmer, 968 F.2d 1570, 1583-84 (2d Cir. 1992) (constructive trust may create a legal interest, but tracing is required to show property held in constructive trust is property being forfeited); County of Oakland v. Vista Disposal, 826 F. Supp. 218, 223-24 (E.D. Mich. 1993) (same); see also United States v. $61,483.00 in U.S. Currency, 2003 WL 1566553, at *2 (W.D. Tex. Feb. 18, 2003) (claim of interest based on constructive trust failed because claimant could not satisfy all elements of constructive trust under state law; in particular, claimant there could not show defendant obtained money from him by fraud).

[16] See United States v. $3,000 in Cash, 906 F. Supp. 1061, 1066-67 (E.D. Va. 1995) (constructive trust not imposed even though claimant could trace assets because claimant did not have "clean hands").

[17] See United States v. Marx, 844 F.2d 1303, 1307-08 (7th Cir. 1988) (imposing a constructive trust in favor of wife of convicted defendant); United States v. All Funds on Deposit … in the Name of Kahn, 129 F.3d 114, 1997 WL 701366, at *2 (2d Cir. Nov. 10, 1997) (Table) (constructive trust requires a confidential relationship, and thus, is usually imposed in family law cases, not commercial cases); United States v. Coluccio, 51 F.3d 337, 340 (2d Cir. 1995) (mother who gave son money with expectation that it be returned is beneficiary of constructive trust and has standing to contest forfeiture).

adequate remedy at law;[18] (5) the failure to impose the trust must result in the unjust enrichment of the wrongdoer;[19] and (6) the imposition of the trust on behalf of one victim must not work to the disadvantage of other victims who are similarly situated.[20]

The sixth element is critical in multi-victim cases. Even assuming, *arguendo*, that some victims are able to satisfy the other five elements of a constructive trust, their effort to intervene still should fail because the sixth element is lacking. The essence of the sixth element is this: constructive trusts are creations of equity; if the imposition of the trust results in the disparate treatment of similarly situated persons, the trust should not be imposed. Especially in "Ponzi" fraud cases, like this case, the ability of one set of victims to trace their property to the defendant

---

[18] <u>United States v. Ribadeneira</u>, 105 F.3d 833, 837 n.5 (2d Cir. 1997) (constructive trust was not imposed because opportunity to file a remission petition with Attorney General gave claimant adequate remedy at law); <u>United States v. All Funds on Deposit…in the Name of Kahn</u>, 129 F.3d 114, 1997 WL 701366, at *2 (2d Cir. Nov. 10, 1997) (Table) (claimant had adequate remedy at law in remission process); <u>United States v. Power Company, Inc.</u>, __ F. Supp.2d __, 2008 WL 612207, at *8 (D. Nev. Feb. 28, 2008) (court refuses to impose constructive trust because claimant's ability to file suit against the defendant provided an adequate remedy at law); <u>United States v. Wheaton</u>, 2005 WL 2429792, at *6-7 (D. Me. Sept. 28, 2005) (petitioner's constructive trust claim fails because she has adequate remedy at law; remedy is not right to file a remission petition, but right to sue defendant); <u>United States v. $79,000 in Account Number 2168050/6749900</u>, 1996 WL 648934, at *6 (S.D.N.Y. Nov. 7, 1996) (beneficiary of a constructive trust would have standing under Second Circuit law, but no constructive trust created where claimant has adequate remedy at law; *i.e.*, ability to file remission petition).

[19] <u>See</u> <u>In re Kennedy and Cohen</u>, 612 F.2d 963, 965 (5th Cir. 1980); <u>United States v. $61,483.00 in U.S. Currency</u>, 2003 WL 1566553, at *3 (W.D. Tex. 2003) (declining to impose constructive trust because claimant could not show defendant obtained money from him by fraud).

[20] <u>See</u> <u>Sisters of the Presentation of the Blessed Virgin Mary of Aberdeen, South Dakota v. Nat'l Credit Union</u>, 961 F.2d 733, 737-38 (8th Cir.1992) (where imposition of constructive trust in favor of one set of creditors would be unfair to other creditors, or would disrupt orderly administration of debtor's estate, remedy should be denied); <u>Downriver Community Fed'l Credit Union v. Penn Square Bank</u>, 879 F.2d 754, 762 (10th Cir. 1989) (same); <u>Bruneau v. FDIC</u>, 785 F. Supp. 585, 588 (E.D. La. 1992), <u>aff'd without op.</u>, 981 F.2d 175 (5th Cir. 1992) (same).

*res*, and thus to be eligible to have a constructive trust imposed on their behalf, contrasts with the inability of other victims to do the same, for no reason other than that the fraudsters typically will have spent much of the property they obtained early in their schemes to support themselves and to pay out to early participants, as apparent profits, in support of the schemes. Courts should not impose constructive trusts where some victims can trace, but others cannot. "Jumping the line" may be a prime motivation for victims who seek to intervene. But "line-jumping runs afoul of the constructive trust criteria.[21]

> **C.**    **Two Cases From Other Circuits That Permit Fraud Victims to Intervene as Beneficiaries of Constructive Trusts, Are Wrongly Decided.**

The relation-back doctrine at issue in the BCCI criminal cases is applicable to all civil forfeiture actions arising under Section 981. See 18 U.S.C. § 981(f). As described previously, that doctrine, and the existence of a process by which victims may petition the Attorney General for remission of forfeiture property, ought to be dispositive in all cases where victims of the offenses giving rise to the forfeitures seek to intervene in the forfeiture cases. Nevertheless, in two cases from other circuits, victims of frauds have succeeded in permitting courts to permit their intervention in federal forfeiture cases. In United States v. $4,224,958.57 (Boylan), 392

---

[21]    See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of BCCI Depositors), 833 F. Supp. 9, 14 (D.D.C. 1993) (court should not impose constructive trust, even if all elements are otherwise satisfied, if to do so would disrupt liquidation proceedings designed to distribute forfeited property equitably and provide an advantage to some victims at the expense of others); United States v. Sokolow, 1996 WL 32113, at *19 (E.D. Pa. Jan. 26, 1996) (constructive trust should not be imposed if result would be to deprive victims of funds that Government plans to distribute equitably once forfeiture is final), aff'd, 81 F.3d 397 (3d Cir. 1996), remanded in part by 91 F.3d 396 (3d Cir. 1996) (for new restitution order only). Cf. United States v. Durham, 86 F.3d 70 (5th Cir. 1996) (in fashioning restitution order, court may distribute property *pro rata* to all victims and need not impose constructive trust for benefit of "tracers").

F.3d 1002 (9th Cir. 2004), the Ninth Circuit remanded a civil forfeiture fraud case for further proceedings to determine whether certain claimants could establish that they were victims of a fraud and entitled to imposition of a constructive trust under California law. $4,224,958.57 (Boylan), 392 F.3d at 1005. In finding a basis for constructive trust, the Ninth Circuit, in Boylan, wrote that a fraudster always holds property it acquires from a victim in constructive trust for his victim. Id. Because the court looked only to some general principles of trust law before concluding that a trust always existed, it did not address the conflict between its conclusion and the relation-back doctrine that this Circuit scrutinized in the BCCI litigation (embodied, for civil forfeiture cases, in 18 U.S.C. § 981(f)). Boylan also failed to consider requirements of prudential standing and whether imposing a constructive trust for some victims would impact, inequitably, similarly-situated victims.

Boylan's deficiencies have led to much criticism and caused district courts in the Ninth Circuit to curtail its application. For example, a district court in the Eastern District of California declined to recognize a constructive trust on behalf of victims of an investment fraud, reasoning that the victim/investors lacked prudential standing to contest forfeiture. United States v. Real Property Located at 730 Glen-Mady Way, 590 F. Supp.2d 1296 (E.D.Cal. 2008). In a careful analysis of the Boylan opinion, the district court found that the Ninth Circuit's "decision does not address the separate prudential strand of the standing doctrine." Id. at 1302 (citing United States v. Lazarenko, 476 F.3d 642, 651-52 (9th Cir. 2007) ("holding that even if litigants had Article III standing to contest criminal forfeiture, 'we would still dismiss because this case raises prudential concerns…'")). As the district court explained, "[p]rudential standing embodies judicially self-imposed limits on the excise of federal jurisdiction" and, among other things "encompasses the

requirement that a litigant's claim fall within the zone of interests protected by the law invoked." Glen-Mady Way at 1302 (citations omitted).  Holding that the interests of victim/investors were not within the zone of interests Congress intended to protect in forfeiture, the court in Glen-Mady Way declined to impose a constructive trust.  Id.  ("Congress left it to the discretion of the Attorney General to address victim claims through a remission process that occurs after the successful prosecution of the forfeiture case.").  The district court further stated, that under the Ninth Circuit's reasoning in United States v. Bright, 353 F.3d 1114, 1123-25 (9th Cir. 2004), imposition of a constructive trust, an equitable remedy, was inequitable because it would conflict with Congress' grant of discretion to the Attorney General under the Civil Asset Forfeiture Reform Act.  Id. at 1304 ("the exercise of Article III equitable power presumes a right of action and Congressional silence on the question of remedies.").  Finally, the district court noted that whether to graft a restitution remedy for crime victims on the back of the Government's forfeiture authority was a policy choice for Congress, not the courts, and imposition of a Boylan-style trust administrator (absent a request by the Government) was neither necessary nor efficient in light of the Attorney General's remission procedure.  Id. at 1304.  In short, the district court recognized that Boylan's hasty construct of a trust was inconsistent several other Ninth Circuit precedents and the federal statutory scheme.

In another recent post-Boylan decision, a district court in the Nevada similarly declined to impose a Boylan-style constructive trust when the putative claimant alleged indebtedness, amounts due under a contract, and damages for breach of contract, unfair dealing, and RICO violations.  United States v. Power Company, Inc., __ F. Supp.2d __, 2008 WL 612207 (D.Nev. 2008).  In Power Company, the court found that the claimant's allegations of a legal interest in

potential compensatory and punitive damages represented only "a general unsecured creditor's potential right to receive payment," not a superior interest in particular assets. As such, the court found that the claimant lacked standing because, under Nevada law, a beneficiary of a constructive trust is entitled to specific property, not any property the title holder owns. Id. at *8. In addition, Power Company also reasoned that imposition of a constructive trust "is not essential to the effectuation of justice" because the claimant had an adequate remedy in the form of another lawsuit pending.

This Court should adhere to Circuit precedent articulated in BCCI and also might, like the courts in Glen-Mady Way and Power Company, expressly reject Boylan for reasons of prudential standing and equity.

One other circuit panel has fallen prey to the trap of Boylan's illogic. Late last year the Eleventh Circuit used an unsigned, *per curiam* opinion to decide, without the benefit of oral argument, that an unsecured creditor, using a constructive trust theory, should have been permitted to intervene in the ancillary proceedings of a criminal case in order to secure directly for the victim assets the defendant had obtained by fraud.

In United States v. Shefton, 548 F.3d 1360 (11th Cir. 2008), the Eleventh Circuit decided that a fraud victim who could trace his losses to the property forfeited by the defendant was entitled to the imposition of a constructive trust, and thus could recover the property in the district court's post-conviction ancillary proceeding. Defendant Shefton committed a mortgage fraud offense when he induced the lender financing the purchase of a parcel of real property to pay off a non-existent mortgage. Shefton pocketed over $700,000 in fraud proceeds and used them to acquire various assets that he was ultimately ordered to forfeit as part of his conviction.

In his post-forfeiture ancillary proceeding, his victim lender (claimant) filed a claim asserting that the forfeited property was traceable to the money it had been induced to send Shefton, and that it owned the money, through imposition of a constructive trust. The Government opposed the claim, arguing that a constructive trust is not a cognizable legal interest under the applicable forfeiture statute, 21 U.S.C. § 853(n)(6)(A). After the district court agreed with the Government, the lender appealed.

In a *per curiam* opinion issued on complex issues concerning the intersection of constitutional law, federal law, state law, and even choice of law, and without the benefit of oral argument, a panel of the Eleventh Circuit reversed the district court and entered judgment for the lender. Under Georgia law, the panel decided, the victim of a fraud is entitled to the imposition of a constructive trust over property traceable to the offense. The panel held that a constructive trust arises at the moment the fraud occurs, and thus constitutes a legal interest in the property that was superior to the defendant's interest at the time the offense giving rise to the forfeiture occurred. The panel also rejected the Government's argument that the Attorney General's authority to use forfeited funds to reimburse the victims of fraud constituted an adequate remedy at law.

The Eleventh Circuit's decision is seriously flawed. The threshold issue regarding the ability of a third party to prevail on a constructive trust theory in the ancillary proceeding is whether the claimant's interest existed at the time of the offense giving rise to forfeiture. See 21 U.S.C. § 853(n)(6)(A). On this crucial timing issue, the panel noted that the District of Columbia Circuit held in BCCI that a constructive trust is a judicial remedy that does not exist until it is imposed by a court following litigation. But the Eleventh Circuit concluded that the

29

"majority of circuits" have held to the contrary. In fact, only in the Ninth Circuit's <u>Boylan</u> decision did another circuit address that same issue and reach a contrary decision. Other Circuits have declined to impose constructive trusts after weighing the apparent equities. <u>See</u> <u>e.g.</u> <u>United States v. Andrews</u>, 530 F.3d 1232, 1237 (10th Cir. 2008) (finding it unnecessary to decide this issue because the district court did not err in rejecting claimants' constructive trust argument on the merits). As the Tenth Circuit did in <u>Andrews</u>, other courts have bypassed the conflict that would arise should they decide that, like the relation-back doctrine, constructive trusts pre-exist and always operate to divest wrongdoers of any interest in property upon commission of criminal activity. Other courts have avoided that conflict by deciding that the elements of a constructive trust were not satisfied.

Although <u>Shefton</u> chose to follow the Ninth Circuit on the threshold issue, deciding that the constructive trust vested by operation of law, not by decision of the court, <u>Boylan</u> cited no authority for its conclusion, and its conclusion was wrong as a matter of well-settled Ninth Circuit law[22] as well as federal law generally applied when constructive trusts are requested. As this Circuit recognized, properly, constructive trust is an inchoate remedy that does not exist until imposed by a court, and like other inchoate rights, cannot constitute a legal interest that existed at the time of the offense giving rise to the forfeiture as section 853(n)(6)(A) requires. Although the Eleventh Circuit panel disagreed, it failed to explain why it determined to resolve – against the federal relation-back laws, in favor of a state's law – the temporal conflict it necessarily created when it decided that a constructive trust did exist when the fraudulent activity occurred.

The panel also seemed to think that once it decided the threshold issue in the claimant's

---

[22] <u>United States v. Bright</u>, 353 F.3d 1114, 1123-25 (9th Cir. 2004).

favor, its inquiry was over. It failed to consider all of the elements that must be satisfied before a constructive trust, a creature of equity, may properly be imposed. The panel correctly noted that the claimant was induced to part with its property by fraud, and that it could trace its losses directly to the forfeited property: two important requirements of a constructive trust. But the court failed to consider that its refusal to impose a constructive trust would not result in any unjust enrichment (because the forfeited property would not remain with the wrongdoer), that there was no fiduciary or other confidential relationship between the parties, and that the imposition of the trust in favor of the claimant in its case would disadvantage other victims who were similarly situated. See Andrews, 530 F.3d at 1238 (district court did not abuse its discretion in refusing to impose a constructive trust on behalf of a victim who could trace his losses to the forfeited property where doing so would have been unfair to the victims who could not trace; in that situation, it is better to allow the Government to forfeit the property and distribute it to all of the victims on a pro rata basis). The court also failed to acknowledge the case law holding that the Attorney General's remission authority under 18 U.S.C. § 981(e)(6) and the related remission regulations constitute an adequate remedy at law. See, e.g., Ribadeneira, 105 F.3d at 837 n.5; Power Company, Inc.; United States v. One Silicon Valley Bank Account, 549 F. Supp.2d 940, 956 (W.D. Mich. 2008) (ability to file remission petition with the Attorney General is an adequate remedy at law).

Ultimately, the fact that the federal courts have discretion to decide whether the facts in a particular case support imposition of a constructive trust vitiates the Eleventh Circuit's conclusion that the D.C. Circuit erred when it wrote, in resolving the many BCCI claims, that an ownership interest arising from the forfeiture court's recognition of a constructive necessarily

occurs after the relation-back doctrine has already moved ownership over to the Government. After all, a court has discretion to impose a constructive trust. Therefore, it has to be true that a constructive trust that came into existence only after the federal court decided, in its discretion, that circumstances warranted imposing one (whether under state or federal law), cannot trample the mandatory relation-back divestiture provisions that always pertain under federal law.

Lastly, and perhaps most important, the panel failed to realize that if every fraud victim who could trace his losses to the property forfeited by the Government in a criminal case were entitled to challenge the forfeiture by asserting a constructive trust theory, it would be impossible for the Government to impose forfeiture as a penalty against the fraudster, despite Congress' intent.

In this case, this Court should reject all victims' efforts to intervene as owner-claimants. Consistent with the D.C. Circuit's holding, a constructive trust is an equitable creation of a court, and even if a claimant were able to satisfy the elements of a constructive trust on the facts of this case, which, given the number of victims, and their differing situations, is dubious, this Court should hold that imposition of a constructive trust in favor of some victims, as an equitable remedy, would be inconsistent with the federal statutory scheme.

### III. EFFORTS BY FRAUD VICTIMS TO INTERVENE IN FEDERAL FORFEITURE CASES SHOULD BE REJECTED ON PRUDENTIAL STANDING GROUNDS.

In forfeiture cases, each intervenor's ability to establishing statutory and Article III standing may not end the intervention inquiry. In addition to requiring Article III standing, the Supreme Court has said that for "prudential" reasons, federal courts should exercise their jurisdiction only when the potential litigant's claim falls "within the zone of interests protected by

the law invoked." Elk Grove Unified School District v. Newdow, 542 U.S. 1, 12 (2004). This doctrine, termed "prudential standing," recognizes that although litigants might have sufficient interests in matters to satisfy the case-or-controversy requirement of Article III of the Constitution, they might fall outside the category of persons that a given law was intended to protect.

To prevent asset forfeiture cases from becoming liquidation proceedings, Congress listed the categories of persons entitled to assert an innocent owner defense to a civil forfeiture action in detail when it defined "owner" for purposes of the innocent owner defense in Section 983(d)(6). By doing so, Congress determined clearly the "zone of interests" that the applicable law was designed to protect: "owners" – as that term is defined in the statute – are protected by the civil forfeiture laws (to the extent they prove their innocence) while "non-owners" are not. Prudential standing requires courts to exercise jurisdiction to consider claims in forfeiture cases only when claimants meet the definition of "owner" in the forfeiture statutes. Victims and unsecured creditors fall outside that zone. See 18 U.S.C. § 983(d)(6) ("'owner' . . . does not include . . . a person with only a general unsecured interest in, or claim against, the property or estate of another[.]").

In United States v. Real Property Located at 730 Glen-Mady Way, 590 F. Supp.2d 1295 (E.D. Cal. 2008) the court determined that prudential standing to entertain claims by victim-intervenors was lacking by, instead, at the remission provision. Glen-Mady Way held that even if a fraud victim had Article III standing to contest the forfeiture of the fraudster's proceeds, he would not have prudential standing to do so because Congress provided for crime victims to be reimbursed in a different way. Rather than filing claims contesting the forfeiture of the

33

wrongdoer's property, Congress intended that crime victims would seek restitution from the Attorney General. When crime victims who have no legal interest in particular property subject to forfeiture ignore this remedy and attempt to contest the forfeiture, their claims necessarily fall outside the "zone of interests" that the forfeiture laws were designed to protect. They, accordingly, lack prudential standing. Id. at 1302 (claimant must have Article III and prudential standing; because Congress intended that victims be compensated by Attorney General through remission process, and not by courts sitting as trust administrators in forfeiture cases, fraud victims lack prudential standing to contest forfeiture of fraud proceeds).

Many fraudsters owe money to innocent third parties at the time they commit offenses that support a forfeiture of some of their assets. If each fraudster's creditor were entitled to contest the forfeiture as the beneficiary of a constructive trust, there would be few cases where the Government could ever succeed in forfeiting the fraudster's assets. To the contrary, in most cases the court would be cast in the role of a bankruptcy court, liquidating the assets of a fraudster for the benefit of third parties. This is not what Congress intended.

## CONCLUSION

Movants are but an unhappy few of the many thousands of victims of the fraud schemes described in the complaint. They seek to muscle aside their fellow sufferers, and cannot even pretend to be acting in the best interests of the other victims. If successful, their attempt to gain an advantage over the remaining victims of the scheme by intervening in this forfeiture action will cause either manifest injustice, unconscionable delay, or both. It is and has been the Government's intention to distribute the recovered proceeds of the fraud through the post-forfeiture petition process established by Congress. That distribution is not, and should not, be

34

determined by whom amongst the victims has money to retain separate counsel or is more aggressive in pursuing a recovery.  If any third-party unsecured creditors are permitted to intervene, their participation in this action will delay the ultimate distribution of the funds, waste the time and resources of this Court, and chill future efforts to dismantle fraud schemes using the forfeiture tools Congress has provided to federal prosecutors.  No third-party creditor interventions should be permitted; those motions that are pending should be denied in their entirety.

<div style="margin-left: 40%;">

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, DC Bar #426301
VASU B. MUTHYALA, CA Bar #210462
Assistant United States Attorneys
U.S. Attorney's Office, Criminal Division
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 307-0258

</div>

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Opposition to be served by means of the Court's ECF system on this 19th day of March 2009 upon all counsel of record and by mail the following day to Thomas A. Bowdoin, Jr. and the return addresses of the individuals or entities that appear to have prepared the documents docket as Documents 43-46 in the Court's docket.

<div style="margin-left: 40%;">

_/s/_____
William R. Cowden

</div>