UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
| )                                   | |
| Plaintiff,      )                   | Civil Action No. 08-1345 (RMC) |
| )                                   | ECF |
| v.              )                   | |
| )                                   | |
| 8 GILCREASE LANE, QUINCY            ) | |
| FLORIDA 32351, *ET AL.*,            ) | |
| )                                   | |
| Defendants.     ) | |
| ) | |

PLAINTIFF'S OPPOSITION TO THOMAS A. BOWDOIN, JR.'S
MOTION TO EXCLUDE AND SUPPRESS EVIDENCE

Plaintiff, the United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Thomas A. Bowdoin, Jr.'s Motion To Exclude And Suppress Evidence Obtained In Forfeiture Action.

Mr. Bowdoin has filed *pro se* a "Motion To Exclude And Suppress Evidence Obtained In Forfeiture Action." It asserts, inexplicably, that "any information or evidence given by defendant constituted an unreasonable search. United States v. Tweel, 550 F.2d 297 (5th Cir. 1977)." Motion To Exclude, *etc*. at 2. Mr. Bowdoin further states: "Again, any and all evidence obtained by the search and seizure of the forfeiture enforcement and interrogation of Defendant must be excluded and suppressed in this forfeiture action and any subsequent civil and/or criminal prosecution hereafter . . . ." *Id*. Mr. Bowdoin's claim for suppression is meritless, and the Court should reject it. In summary, there are three reasons for the Court to do so:

> (1) The agents had a lawfully issued judicial warrant to search for and seize all the tangible items taken from Mr. Bowdoin's residence on August 5, 2009, and Mr. Bowdoin's motion alleges nothing to the contrary. Thus, the search and seizure were lawful, and Mr. Bowdoin has no proper claim for the Court to exclude from this case (or any other) any tangible items; this is basic Fourth Amendment law;

(2) Mr. Bowdoin has at best a claim to have excluded from evidence only those statements that he himself made, elicited in violation of the "Miranda rule" or his Fifth Amendment privilege not to "be compelled in any criminal case to be a witness against himself."  Under Miranda v. Arizona, 384 U.S. 436 (1966), the Court should suppress Mr. Bowdoin's statements only if they resulted from custodial interrogation by government agents who failed to advise him of his constitutional rights.  Because Mr. Bowdoin never was in custody when he spoke to government agents on August 5, 2008, he has no Miranda-based claim to the exclusion from evidence in this case (or any other) of his statements; this is basic Fifth and Sixth Amendment law;

(3) It might be inferred that Mr. Bowdoin also wants suppressed some evidence obtained after August 5, 2008, although he manages to identify no particular evidence that he would have suppressed.  If Mr. Bowdoin does ask the Court to exclude any such evidence, he has failed to show that (A) the government got the evidence as a direct result of some unlawful conduct on August 5, 2008; (B) suppression is warranted because the connection between allegedly unlawful conduct on August 5, 2008, and the evidence was insufficiently attenuated; or (3) that there was some other, later unlawful government conduct justifying suppression of evidence.

**Factual Background**:

On August 5, 2008, federal agents executed a search warrant at Mr. Bowdoin's residence at 8 Gilcrease Lane, Quincy, Florida.  A federal magistrate judge in Tallahassee, Florida, issued the warrant upon probable cause, supported by an affidavit made under oath, which particularly described the place to be searched and the things to be seized.  The agents served this search warrant as part of an investigation into an unlawful Ponzi-style fraud that Mr. Bowdoin and others had committed.  The agents seized certain papers and other tangible evidence as the search warrant authorized them to do.  When the agents arrived at Mr. Bowdoin's residence on August 5, 2008, he was present, and when the agents left Mr. Bowdoin's residence, he remained there.  No government agent arrested Mr. Bowdoin or took him into custody on August 5, 2008.  Indeed, no federal agent has done so since then either.

When serving the search warrant, the agents did not break the Bowdoin home's door or windows to gain entry. Neither Mr. Bowdoin, nor any other person present, was immobilized or told to get on the floor while the agents secured the premises. Although the agents carried service weapons with them, none of the agents drew a firearm from its holster while executing the search warrant, nor during the interview. No agent manhandled Mr. Bowdoin or used violence in executing the warrant. None of the agents was in police uniform. It does not even appear that any agent touched Mr. Bowdoin or any member of his family other than to display the search warrant, escort him to a table in the home for the interview, and supply him with a copy of the warrant as required under Fed.R.Crim.P. 41(f)(1).

Although Mr. Bowdoin was not arrested nor taken into custody, he did voluntarily answer questions from U.S. Secret Service agents on August 5, 2008, concerning Ad Surf Daily (ASD) and Golden Panda (GP). This happened during the execution of the search warrant, and the entire interview occurred at Mr. Bowdoin's home. Mr. Bowdoin did not have counsel present during the interview. Because Mr. Bowdoin was not in custody, however, the federal agents had no reason to advise Mr. Bowdoin of his rights under the Fifth and Sixth Amendment to the U.S. Constitution, federal statutes, or state or local law. Although Mr. Bowdoin initially said that he did not want to discuss the ASD and GP Operations without a lawyer present, he quickly changed his mind, agreeing to speak with the agents while they were there. He certainly never declined to answer any of the federal agents' questions, and Mr. Bowdoin never said he only would answer questions if he could have an attorney present during the interview. Indeed, Mr. Bowdoin was quite voluble, and voluntarily so. At no time did any federal police agent place Mr. Bowdoin under arrest, tell him he had been arrested, or place him in hand-cuffs or other

physical restraints.

**Argument**:

Mr. Bowdoin's "Motion To Exclude And Suppress Evidence Obtained In Forfeiture Action" is confusing about what evidence it asks the Court to suppress ("any and all evidence obtained by the search and seizure of the forfeiture enforcement and interrogation of Defendant must be excluded and suppressed in this forfeiture action and any subsequent civil and/or criminal prosecution"). Logically, only two kinds of evidence can be at issue: (1) tangible items, such as papers, ledgers, pictures, or computer-based information; and (2) statements by Mr. Bowdoin.[1]

We do not read Mr. Bowdoin's filing to lay much claim to suppression of physical or tangible evidence seized at his residence on August 5, 2008. Evidence seized pursuant to a valid search warrant is not subject to exclusion except under extraordinary circumstances. See United

---

[1] Mr. Bowdoin's written submissions insinuate otherwise, but he is not now a defendant. Nevertheless, suppression of unlawfully seized evidence normally is a remedy in criminal prosecutions, also has a place in civil forfeiture actions. Supplemental RuleG(8)(a) states: "If the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress use of the property as evidence. Suppression does not affect forfeiture of the property based on independently derived evidence." See United States v. $639,558 In U.S. Currency, 293 U.S.App.D.C. 384, 387 & n.5, 955 F.2d 712, 715, n.5 (D.C. Cir. 1992) (affirming decision to suppress defendant *res* in civil forfeiture action and subsequent dismissal of action) (qualified by Supplemental Rule G)); United States v. Property, Parcel of Aguilar, 337 F.3d 225, 234 (2d Cir. 2003) (illegal seizure, standing alone, does not immunize property from forfeiture; it only precludes government from introducing evidence gained by seizure).

Of course, it is black-letter law that Mr. Bowdoin has no standing to seek to suppress any statements made by someone else, no matter how illegally he might think they were taken. See Bellis v. United States, 417 U.S. 85, 89-90 (1974) (Fifth Amendment privilege against self-incrimination strictly personal in nature and therefore not available to member of dissolved partnership). In any event, Mr. Bowdoin has not identified any statement made by anyone else, which he wants suppressed.

States v. Leon, 468 U.S. 897 (1984); Franks v. Delaware, 438 U.S. 154 (1978); United States v. Spencer, 382 U.S.App.D.C. 90, 93, 530 F.3d 1003, 1006 (D.C. Cir. 2008). Mr. Bowdoin's "Motion To Exclude And Suppress Evidence Obtained In Forfeiture Action" has not hinted at anything that could warramt suppressing evidence on Fourth Amendment grounds.

This leaves for the Court to consider if Mr. Bowdoin has a claim to suppress any statements he made to federal agents on August 5, 2008. This seems to be the thrust of Mr. Bowdoin's "Motion To Exclude And Suppress Evidence, *etc*.," insofar as it can be fathomed. But, the law does not entitle Mr. Bowdoin to suppression of any statements unless either he made them involuntarily or they were the result of a violation of the Miranda rule. See United States v. Baird, 271 U.S.App.D.C. 121, 124-125, 127-128, 851 F.2d 376, 379-380, 382-383 (D.C. Cir. 1988) (although defendant had not been given "Miranda" advice, his statements should not have been suppressed when he made them voluntarily and he was not in custody when questioned).

Mr. Bowdoin asserts that he never received what are colloquially known as "Miranda warnings," and claims, therefore, that his statements should be excluded from evidence in this case. Mr. Bowdoin's argument has no merit because he was not in custody when he spoke to the federal agents at his home on August 5, 2008. See California v. Beheler, 463 U.S. 1121, 1123-1124 (1983) (confession should not be suppressed because Miranda warnings not required when defendant not in custody when interrogated). Because Mr. Bowdoin never was in custody on August 5, 2008, he was not the victim of a violation of the Miranda rule. See United States v. $433,980 in U.S. Currency, 473 F. Supp.2d 672 (E.D.N.C. 2006) (suppression of statement rejected when its maker never placed under formal arrest, never commanded to answer questions, nor physically restrained, and interactions with police were largely consensual – there being no

5

"custody," Miranda warnings were not required); *cf.* United States v. Patane, 542 U.S. 630, 641 (2004) ("Our cases also make clear the related point that a mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule."). This Court should reject Mr. Bowdoin's arguments that his statements ought to be suppressed in this case (or any other).³

Thus, even under Miranda's prophylactic rule, if this were a criminal prosecution, Mr. Bowdoin would have no proper claim to suppress his statements in evidence. But it is not a criminal case; it is a civil forfeiture action. As a result, Mr. Bowdoin's invocation of the exclusionary rule also ought to be rejected because granting such relief in a civil forfeiture action has almost no basis in precedent and none in logic. See United States v. Patane, *supra*, 542 U.S. at 636-637 ("Miranda rule is a prophylactic employed to protect against violations of the

---

³ In support of his suppression claim, Mr. Bowdoin cites three cases. None warrants granting the relief he seeks. Orozco v. Texas, 394 U.S. 324, 327 (1969), does not apply to Mr. Bowdoin's claim because the Orozco defendant "was under arrest and not free to leave when he was questioned in his bedroom in the early hours of the morning." Mr. Bowdoin was not under arrest when he spoke to the agents on August 5, 2008, and he never has been arrested or taken into custody on criminal charges arising from his role in the ASD and Gold Panda frauds.

Further, not only is United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969), inapposite on its facts to Mr. Bowdoin's suppression claim, but the Seventh Circuit has since overruled Dickerson by name. See United States v. Fitzgerald, 545 F.2d 578, 580 & n.2 (7th Cir. 1976) (acknowledging that Supreme Court's decision in Beckwith v. United States, 425 U.S. 341 (1976), had overruled Dickerson, and holding that because defendant was not in custody when he gave statement, it was admissible even though he was not given "Miranda warnings"). Last, what United States v. Tweel, 550 F.2d 297 (5th Cir. 1977), had to do with Mr. Bowdoin's case could hardly be less clear. Regardless of its current vitality, Tweel is a Fourth Amendment case holding that a consent to search was involuntary. *Id*. at 298-299. It has little, if anything, to do with suppressing statements made when Mr. Bowdoin was not in custody. Moreover, Tweel's language strongly suggests that it is limited to IRS cases involving alleged income tax evasion. *Id*. at 300 ("We cannot condone this shocking conduct by the IRS. Our revenue system is based upon the good faith of the taxpayers and the taxpayers should be able to expect the same from the government in its enforcement and collection activities.")

6

Self-Incrimination Clause. . . .  And just as the Self-Incrimination Clause primarily focuses on the criminal trial, so too does the Miranda rule."); United States v. Dickerson, 530 U.S. 428, 443-444 (2000) (Miranda's core ruling is that unwarned statements resulting from custodial interrogation may not be used as evidence in criminal cases in prosecution's case-in-chief); but cf. United States v. Funds in the Amount of $100,120, 361 F. Supp.2d 757, 762 n.1 (N.D. Ill. 2005) (without analysis of statements' voluntariness or propriety of applying Miranda in civil case, Court rules that government may not use statements obtained during custodial interrogation of train passenger to support probable cause for search of passenger's briefcase).

The Fifth Amendment states that:  "No person . . . compelled in any criminal case to be a witness against himself . . . ." (emphasis supplied).  By its express language, the clause does not reach civil cases.  The right's philosophical antecedents descend entirely from criminal prosecutions by the English Crown or its agents in the North American colonies.  See Leonard W. Levy, Origins Of The Fifth Amendment (1968) (especially chapters III & XI, respectively "The Elizabethan Persecution of Catholics" and "The American Colonies in the Seventeenth Century" (right against self-incrimination evolved in America as part of reception of common law's accusatorial system of criminal procedure)).  Although modern practice permits a witness to exercise the right against self-incrimination in a non-criminal matter, this is because the answer given in a civil matter could be used separately as an admission in a criminal prosecution. See United States v. Kordel, 397 U.S. 1, 7-8 (1970).  But, even though Fifth Amendment law forbids commenting on a witness's silence in a criminal prosecution against her, Doyle v. Ohio, 426 U.S. 610 (1976), inferences from such silence may be drawn in civil litigation.  See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (Fifth Amendment does not forbid adverse inferences

7

against parties to civil actions when they refuse to testify in response to probative evidence offered against them: Fifth Amendment "does not preclude the inference where the privilege is claimed by a party to a Civil cause") (quoting 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961)). As a result, not every Miranda violation requires the Court to exclude a defendant's statements from evidence. See Oregon v. Hass, 420 U.S. 714, 722 (1975) ("it does not follow from Miranda that evidence inadmissible against [defendant] in the prosecution's case-in-chief is barred for all purposes, always provided that 'the trustworthiness of the evidence satisfies legal standards') (quoting Harris v. New York, 401 U.S. 222, 224 (1971) (statement inadmissible in prosecution's case-in-chief because of Miranda violation was properly usable for impeachment purposes to attack credibility of defendant's trial testimony); Bustos-Torres v. INS, 898 F.2d 1053, 1056 (5th Cir.1990) (Miranda warnings not required in deportation proceedings because these are civil, not criminal in nature) (citing Trias-Hernandez v. INS, 528 F.2d 366, 368 (9th Cir.1975) (holding that Miranda warnings are not required in civil immigration proceedings); cf. Roach v. National Transp. Safety Bd., 804 F.2d 1147, 1152-1155 (10th Cir. 1986) (pilot could not invoke Fifth Amendment right not to take stand at administrative hearing on license suspension). Even in a criminal case, if a person has been given immunity from prosecution, the witness may be compelled to give testimony. See United States v. Patane, *supra*, 542 U.S. at 638 (government may compel grand jury testimony from witness over Fifth Amendment objections if the witnesses receive use and derivative use immunity) (citing Kastigar v. United States, 406 U.S. 441 (1972)).

Thus, no clear rule suggests that evidence should be excluded from a civil forfeiture action just because it was acquired through a Miranda violation – which did not happen to Mr.

8

Bowdoin anyway – and <u>Miranda's</u> limited scope counsels that it should not be expanded to apply in a civil forfeiture action. See <u>United States</u> v. <u>Patane</u>, *supra*, 542 U.S. at 644 (refusing to extend scope of <u>Miranda</u>-based exclusionary rule because it applies only "for certain purposes and then only when necessary to protect the privilege against self-incrimination").

## CONCLUSION

For the reasons set forth above, Thomas A. Bowdoin Jr.'s motion to suppress statements and evidence should be denied.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, DC Bar #426301
VASU B. MUTHYALA, CA Bar #210462
Assistant United States Attorneys
U.S. Attorney's Office, Criminal Division
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 307-0258

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Opposition to be served by means of the Court's ECF system on this 25th day of March 2009 upon all counsel of record and by mail to Thomas A. Bowdoin, Jr. and to the individuals or entities that appear to have prepared the documents docket as Documents 43-46 in the Court's docket.

_/s/_____
William R. Cowden