## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 08-1345 (RMC)** |
| | ) | **ECF** |
| **v.** | ) | |
| | ) | |
| **8 GILCREASE LANE, QUINCY** | ) | |
| **FLORIDA 32351,** *ET AL.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### PLAINTIFF'S OPPOSITION TO THOMAS A. BOWDOIN, JR.'S "NOTICE OF RESCISSION AND WITHDRAWAL OF RELEASE OF CLAIMS TO SEIZED PROPERTY AND CONSENT TO FORFEITURE"

Plaintiff, the United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Thomas A. Bowdoin, Jr.'s "Notice of Rescission and Withdrawal of Release of Claims to Seized Property and Consent to Forfeiture." (Docketed as document #47.)

### 1.    BACKGROUND

On January 13, 2009, the attorneys representing Mr. Bowdoin, Ad Surf Daily and Bowdoin Harris Enterprises, Inc. in this matter filed a motion to withdraw all of the claims t filed on behalf of these claimants in this case. In that motion, the attorneys for these claimants wrote:

> Claimants, AdSurfDaily, Inc., Thomas A. Bowdoin, Jr. and Bowdoin & Harris Enterprises, Inc. (hereinafter "Claimants"), by undersigned counsel, hereby request leave of the Court to withdraw and release claims previously filed, consent to forfeiture, as follows: 1. Claimants withdraw and release with prejudice the verified claims they filed in this civil forfeiture action. 2. Claimants consent to the forfeiture of the properties for which they have asserted claims (i.e., the real property at 8 Gilcrease Lane and the bank account balances at the Bank of America in the names of Thomas. A. Bowdoin Jr., sole proprietor, d/b/a AdSurfDaily) and expressly announce their intention to not contest the Government's forfeiture efforts against the properties for which they have asserted

claims.

Motion for Leave to Withdraw Claims Release of Claims to Seized Property and Consent to
Forfeiture, Document #39 at 2 (filed January 13, 2009).  On January 22, 2009, the Court granted
the Motion, effectively striking the claims that AdSurfDaily, Inc., Thomas A. Bowdoin, Jr. and
Bowdoin & Harris Enterprises, Inc. filed on August 15, 2008.

Approximately one month later, however, Mr. Bowdoin filed, *pro se*, a series of motions
by which he indicated that he had changed his mind.  See Document #47, 48, 49, 50, 55.)  In a
document he styles as his "Notice of Rescission and Withdrawal of Release of Claims to Seized
Property and Consent to Forfeiture," which the Court docketed as filed on February 27, 2009
(Document #47 and #55), Mr. Bowdoin writes that he should be permitted to reenter this case –
in essence to be permitted to re-claim, presumably, to challenge some of the forfeitures of the
defendant properties.  Mr. Bowdoin asserts, as his basis for asking the Court to reinstate his
claim, that:  (1) "[t]he procedures used to search and seize [the] property in the forfeiture were
nonexistent"; (2) the claimants "were greatly influenced by legal counsel that was ineffective";
(3) the claimants were illegally intimidated, threatened and coerced by government agents and
attorneys concerning potential prosecutions and sanctions against them"; (4) the claimants acted
under severe duress and true feeling of protest"; (5) "government agents used fraud, trickery and
deceit to . . . convince the claimants that the withdrawal and release of claims was their only
option"; (6) "government agents and prosecutors acted in bad faith in deciding to use a civil
investigation and forfeiture to gain information and evidence for a criminal indictment and
conviction" and (7) "government agents and prosecutors have willfully and intentionally used an
illegal forfeiture to destroy the business enterprise that has affected thousands of innocent

purchasers with de minimus or non-existent harm to the public to punish the claimants."

But, Mr. Bowdoin offers no facts to support any of his accusations. Indeed, his accusations are inconsistent with the record. He offers no valid basis for this Court to permit relief from a final order, that he, through his counsel, requested, dismissing him from this proceeding. His request to be permitted to re-claim in this case should be denied.[1]

## 2. <u>LEGAL STANDARDS</u>

Rule 60 provides in relevant part:

**Relief from a Judgment or Order**

* * *

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or

---

[1] On March 26, 2009, this Court ordered Mr. Bowdoin's prior counsel to explain to him that corporations may not proceed *pro se*. <u>See</u> Document #53. In his "Notice of Rescission, *etc*.," which was filed prior to the Court's March Order, Mr. Bowdoin purports to be acting for two entities on whose behalf his attorneys also had filed claims (in August 2008). At Mr. Bowdoin's direction, the attorneys representing those entities moved to have their claims withdrawn in January 2009, too. Neither entity has submitted its own Rule 60 motion; no attorney has sought to adopt Mr. Bowdoin's *pro se* pleadings.

> applying it prospectively is no longer equitable; or

> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A district court's decision to deny a Rule 60(b) motion is ordinarily reviewable for abuse of discretion. United States v. Haynes, 158 F.3d 1327, 1331 (D.C. Cir. 1998) (citing Browder v. Director, Department of Corrections, 434 U.S. 257, 263 n.7 (1978)); accord Lepkowski v. U.S. Dept. of Treasury, 804 F.2d 1310, 1312 (D.C. Cir. 1986).

> [M]otions for relief under Rule 60(b) are not to be granted unless the movant can demonstrate a meritorious claim or defense; we cannot escape the fact that the complaint and the proposed opposition were insufficient as a matter of law to defeat the motion on the statute of limitations ground. Under these circumstances, we cannot say that the District Court abused its discretion in denying relief from judgment.

Lepkowski v. United State Dep't of Treasury, 804 F.2d at 1314 (footnote omitted) (emphasis added); accord Norman v. United States, 377 F. Supp.2d 96, 98 (D.D.C. 2005) ("Because the Court is persuaded that reinstatement would ultimately be futile" plaintiff's motion under Rule 60(b) was denied); Davis v. Latschar, 83 F. Supp.2d 1 (D.D.C. 1998); Colbert v. Reno, No. 98-5011, 1998 WL 704408 (D.C. Cir. Sept. 10, 1998) (memorandum opinion) ("Nor did the district court abuse its discretion in denying appellant's motion for reconsideration in light of appellant's continued failure to present any arguments in opposition to the government's dispositive motion."); United States v. Exxon Corp., Civil Action No. Civil 78-1035, 1983 WL 1116 (D.D.C. Aug. 29, 1983) (denying reconsideration request that was based on an intervening change in law, particularly where the Plaintiff failed to establish standing).[2]

---

[2] Mr. Bowdoin's effort would fare no better if treated as a motion for reconsideration brought under Rule 59. Motions for reconsideration under Rule 59(e) are subject to a "stringent standard." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Given the judicial and societal interest in the finality of judgments, such motions "are disfavored and relief from

**3.**     <u>ANALYSIS</u>

Regardless whether Mr. Bowdoin's "Notice of Rescission and Withdrawal of Release of

Claims to Seized Property and Consent to Forfeiture" is treated as a motion brought under Rule

60, or a motion under Rule 59, it should be denied.  Mr. Bowdoin fails, in his request, to

demonstrate that he qualifies under any of the applicable standards for asking a court to reverse

course.  Most of the rule's standards are altogether inapplicable, and Mr. Bowdoin also fails to

provide any factual support for the two standards that appear to be most analogous to the

---

judgment is granted only when the moving party establishes extraordinary circumstances."
<u>Niedermeier v. The Office of Max S. Baucus</u>, 153 F. Supp.2d 22, 28 (D.D.C. 2001).  A motion
under Rule 59(e) "is not a second opportunity to present argument upon which the Court has
already ruled, nor is it a means to bring before the Court theories or arguments that could have
been advanced earlier."  <u>W.C. & A.N. Miller Cos. v. United States</u>, 173 F.R.D. 1, 3 (D.D.C.
1997).  <u>See also</u> <u>New York v. United States</u>, 880 F. Supp. 37, 38 (D.D.C. 1995) ("A Rule 59(e)
motion to reconsider is not simply an opportunity to reargue facts and theories upon which a
court has already ruled"); <u>U.S. v. Western Electric Co., Inc.</u>, 690 F. Supp. 22, 25 (D.D.C. 1988)
("A Rule 59(e) motion cannot be used as a vehicle to relitigate matters already argued and
disposed of").

Instead, to succeed on a Rule 59(e) motion, the movant must show "an intervening
change of controlling law, the availability of new evidence, or the need to correct a clear error or
prevent manifest injustice."  <u>Firestone</u>, 76 F.3d at 1208 (internal quotations omitted).  "Only if
the moving party presents new facts or a clear error of law which 'compel' a change in the
court's ruling will the motion to reconsider be granted."  <u>New York</u>, 880 F. Supp. at 39 (<u>quoting</u>
<u>Natural Resource Defense Council, Inc. v. U.S. Environmental Protection Agency</u>, 705 F. Supp.
698, 702 (D.D.C. 1989)).  <u>Compare</u> <u>Consolidated Edison Co. of New York v. O'Leary</u>, 184
F.R.D. 1, 2 (D.D.C. 1998) ("A motion for reconsideration . . . should not be granted unless the
movant presents either newly discovered evidence or errors of law or fact which need
correction") (internal quotations omitted).

A motion for reconsideration is also committed to the sound discretion of the trial court.
"A trial court has broad discretion to grant or deny a motion for reconsideration."  <u>McDonnell-
Douglas v. Nat'l Aeronautics & Space Administration</u>, 109 F. Supp.2d 27, 28 (D.D.C. 2000); <u>see
also</u> <u>Firestone</u>, 76 F.3d at 1208 (reviewing trial court's ruling on 59(e) motion under "abuse of
discretion" standard).

situation he supposes to exist.

Mr. Bowdoin cannot properly argue that at this state the judgment is void or has already been satisfied. Nor can he properly complain about the discovery of new evidence. The closest parallel to be found between Mr. Bowdoin's "Notice of Rescission, *etc*.", and Rule 60's requirements is Mr. Bowdoin's apparent assertions that he agreed to withdraw his claim because of mistake, trickery and misconduct by the government. None of these allegations survives even minimal scrutiny.

Mr. Bowdoin says that after discussing this case with his supporters, and concluding that they were smarter than his attorneys, he has changed his mind. But, "buyer's remorse" is not a basis for establishing that a mistake occurred when the Court issued the order to dismiss the August 2008 claims. Mr. Bowdoin offers no facts to support that any mistake ever occurred.

Nor does "I changed my mind" provide a basis under the catch-all provision in Rule 60(b)(6) to relieve a party from his free and conscious choice regarding the conduct of litigation. The leading case to construe Rule 60(b)(6) as providing no basis for relief where a party has once chosen not to contest a judgment is <u>Ackermann v United States</u>, 340 U.S. 193 (1950). In <u>Ackerman</u>, the litigant sought relief under Rule 60 after electing not to file a direct appeal. The Supreme Court rejected that effort, stating: "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." <u>Id</u>. at 198. In this case, Mr. Bowdoin offers not one fact tending to indicate that his choice to withdraw all of his claims was not free, not calculated and not deliberate. Additionally, a district court should grant a motion for relief from a judgment or order under Rule 60(b)(6) only if the moving party demonstrates that his underlying claims have a reasonable chance of success on the merits. <u>See</u>, <u>e.g.</u>, <u>Bell Tel.</u>

Laboratories, Inc. v Hughes Aircraft Co., 73 F.R.D. 16, 21-22 (D. De. 1976) (citing Rue v. Fuez

Const. Co., 103 F. Supp. 499 (D. D.C. 1952). Neither Mr. Bowdoin, nor his new counsel, begins

to suggest that Mr. Bowdoin could prevail against any of the forfeitures sought here if he were

permitted to challenge them now. In fact, when Mr. Bowdoin, through his counsel, filed his

January 2009 "Motion to Withdraw Claims," seeking to dismiss the August 2008 claims that

provided his statutory standing, he had already admitted to law enforcement agents that the

material allegations that the government made in its forfeiture complaint in this case were all

true. Mr. Bowdoin signed a "proffer letter" that informed him that his proffered statements

would not be used against him in the government's case-in-chief in any criminal prosecution of

him – other than a prosecution for perjury, giving a false statement, or obstruction of justice. But

the letter also explained that Mr. Bowdoin's proffered statements could be used for other

purposes. Mr. Bowdoin and the government never agreed that Mr. Bowdoin's proffered

statements were off the table in this civil case – which explains why, after consulting with his

attorneys, Mr. Bowdoin decided, in January, to withdraw his claims.[3]

---

[3] As the government explained in its Memorandum in Opposition to Members' and Victims'
Motions to Intervene," (Document # 51), Congress imposed a strict deadline for filing claims in
civil forfeiture cases, in part to ensure that cases are resolved expeditiously without needless
delay. Needless delay is especially important in a case, like this, where assets are depreciating
and numerous fraud victims are waiting to be compensated through the post-forfeiture petition
for remission process. The government can do nothing to assist the victims until title to the
property – through the federal forfeiture process – transfers away from the perpetrators of the
fraud scheme. See 18 U.S.C. § 983(a)(4)(A); Supplemental Rule G(5); United States v. Union
Bank for Savings and Investment (Jordan), 487 F.3d 8, 16 (1st Cir. 2007) ("the deadline for filing
a claim in a forfeiture proceeding exists precisely to force all claims, competing or not, to be
made known a the outset of the proceeding;" district court did not abuse discretion in refusing to
consider late filing of claim by claimant who waited to see how court disposed of competing
claim); United States v. $48,000 U.S. Currency, 2007 WL 1467158 (E.D. La. 2007) (the
requirement of strict compliance with the filing requirements that applied to Rule C(6) carry over
to Rule G(5); the late filing of a claim prejudices the government because it increases the length

Mr. Bowdoin also alleges that he was "illegally intimidated, threatened and coerced by government agents and attorneys concerning potential prosecutions and sanctions against them." But that protest is belied by his other statements in the record here. When this case was scheduled for a post-seizure hearing, at the request of the attorneys who Mr. Bowdoin retained in August 2008 to represent him in this civil forfeiture matter, those attorneys told this Court that Mr. Bowdoin would not be testifying at the hearing they had requested. Mr. Bowdoin's attorneys explained that, if called to testify, Mr. Bowdoin would assert his right under the fifth amendment to the Constitution not to incriminate himself. <u>See</u> Document #25. In other words, his own attorneys, presumably in consultation with Mr. Bowdoin, concluded that Mr. Bowdoin faced potential prosecution for his conduct and should not testify. Mr. Bowdoin, through his attorneys, did invoke the fifth amendment. Mr. Bowdoin's apparent assertion now, that his agreement to withdraw from this case hinged on a threat from the government that he was facing criminal culpability, is plainly dishonest. The multiple attorneys Mr. Bowdoin has fired presumably explained precisely as much to him. Nor can Mr. Bowdoin credibly assert that his decision to withdraw was tied to a prosecutor ever having misinformed his counsel.[4] Ultimately, whether Mr. Bowdoin's awareness that he might face prosecution for criminal conduct came directly from

---

and cost of litigation; moreover, allowing the filing of a late claim would "subvert the strict time limits established by Rule G(5) and encourage claimants to litigate every untimely filing in a forfeiture case").

[4] Every viable federal civil forfeiture case is supported by evidence that property was derived from or involved in one or more persons' criminal activity. Thus, there will likely be no forthcoming evidence from Mr. Bowdoin or his new counsel tending to indicate that his decision to withdraw from this case resulted from unsound legal advice concerning potential culpability. Even bad legal advice, however, would not necessarily justify relief under rule 60(b). As the Supreme Court has noted, neglect of one's freely chosen attorney is normally to be treated as the neglect of that party. <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 633-634 (1962).

his conversations with his own attorneys, or from conversations he had with some others, is irrelevant.

Mr. Bowdoin next protests that "government agents and prosecutors acted in bad faith in deciding to use a civil investigation and forfeiture to gain information and evidence for a criminal indictment and conviction." Even assuming that Mr. Bowdoin is correct in predicting a future "indictment and conviction," however, it is not bad faith for the government to conduct a criminal investigation during the pendency of a civil proceeding. See e.g., SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1376-77 (D.C. Cir.1980) (en banc) ("Effective enforcement of the securities laws requires that the SEC and Justice be able to investigate possible violations simultaneously.") (applying United States v. Kordel, 397 U.S. 1 (1970) (no due process violation where evidence obtained from FDA civil investigation used to prosecute criminal misbranding); United States v. Stringer, 535 F.3d 929, 933 (9th Cir. 2008) (reversing district court's dismissal of indictment because "nothing improper about the government undertaking simultaneous criminal and civil investigations").

Lastly, complains Mr. Bowdoin, the government "used an illegal forfeiture to destroy the business enterprise that has affected thousands of innocent purchasers with de minimus or non-existent harm to the public to punish the claimants." The government agrees that the enterprise "affected thousands of innocent" people and it agrees that the enterprise caused "harm to the public." Mr. Bowdoin complains about his lawyers and the government's lawyers – but he does not maintain that the enterprise that affected thousands of innocent people was lawful. As he well knows, the evidence his attorneys produced demonstrated that fallacy of his supposed novel business. Mr. Bowdoin secured funds from the public by promising to them safe, profitable

returns. To keep his fraud scheme afloat, Mr. Bowdoin paid apparent "profits" to early entrants into the scheme, and to friends, family and employees. Mr. Bowdoin confirmed to law enforcement officials that he modeled his enterprise on another's failed fraud scheme, and he acknowledged that there was almost no revenue independent from what he secured from the "members." No witness ASD produced at the emergency hearing disagreed. No ASD official or representative testified that the enterprise secured revenue independent of what it derived from members to support the payments that were promised to the public and paid out to some participants. Mr. Bowdoin also confirmed that the revenue figures of the enterprise were managed to make it appear to prospective members that the enterprise called Ad Surf Daily was a consistently profitable, and brilliant, passive income opportunity. Mr. Bowdoin knew that his conduct was indefensible when he withdrew his claims in January. Nothing material has changed, and nothing Mr. Bowdoin offers in his "Notice of Rescission, *etc*." begins to support the relief he seeks.

## **CONCLUSION**

For the reasons set forth above, Thomas A. Bowdoin, Jr.'s request to have the claims he voluntarily released, reinstated, should be denied.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_/s/_____
WILLIAM R. COWDEN, DC Bar #426301
Senior Trial Attorney, Department of Justice
(202) 307-1754
VASU B. MUTHYALA, DC Bar #496935

10

Assistant United States Attorney
U.S. Attorney's Office, Criminal Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7541

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing Opposition to be served by means of the Court's ECF system on this 24th day of April 2009 upon all counsel of record.


_/s/_____
William R. Cowden