UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 08-1345 (RMC) |
| 8 GILCREASE LANE, QUINCY, ) FLORIDA 32351, *et al.*, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Thomas A. Bowdoin, Jr., renews his motion to vacate an Order approving his release of claims, *see* Dkt. # 41, in this civil *in rem* forfeiture proceeding. Mr. Bowdoin seeks to restore his right to litigate his claim to the defendant properties, arguing that his prior counsel gave him bad advice and the Government tricked him into releasing his claims. *See* Bowdoin's Mots. to Rescind Withdrawal of Claims [Dkt. ## 66, 67, and 131]. As Mr. Bowdoin's own descriptions of events fail to support these arguments, and there is no other reason to grant reconsideration under Rule 60(b), the Court will deny the motion.

### I. FACTS

The Government filed this civil forfeiture action on August 6, 2008, asserting that certain real properties, bank accounts and other things were subject to forfeiture because they were obtained with proceeds from an illegal Internet Ponzi scheme.[1] *See* Compl. [Dkt. # 1]. On August

---

[1] According to the Complaint, "Ponzi schemes promote allegedly lucrative business opportunities, often involving . . . high-return investments. But, in a Ponzi scheme, there is in fact no underlying profitable business to support the payments promoters say they will make to the investors/participants. Instead, . . . the promoters use the money obtained from a growing base of

15, 2008, verified claims to the properties were filed by Bowdoin/Harris Enterprises, Inc.; AdSurf Daily, Inc. ("ASD"); and Mr. Bowdoin. *See* Dkt. # 6. After meeting with the Government, on the advice of his counsel, Mr. Bowdoin filed a motion to withdraw his claims, Dkt. # 39, which was granted by Court Order on January 22, 2009. *See* Dkt. # 41.

Mr. Bowdoin now states that his lawyers in the civil forfeiture case urged him to retain Steven Dobson of Dobson and Smith as his criminal attorney for the anticipated criminal prosecution. He did so and thereafter Mr. Dobson met in Washington, D.C., on two occasions with William Cowden, an attorney with the Department of Justice. Further, according to Mr. Bowdoin:

> In December 2008 and January 2009, Dobson and I met with Cowden and other government officials in Tallahassee, Florida to discuss matters concerning the issues of criminal liability and the civil *in rem* forfeiture proceeding.
>
> Before meeting with Cowden, Dobson asked that I sign an agreement expressing my intent to cooperate with the Department of Justice and releasing the assets. I did that. Dobson represented to me that I could possibly avoid prison or get a reduced sentence if I agreed to disclose details concerning ASD and releasing the assets. I agreed to cooperate and release the assets. I also signed a document stating that I would release my claims in the above-captioned civil *in rem* forfeiture proceeding, again thinking that necessary for a possible avoidance of a prison term. I did all of this on the understanding that by cooperating I could possibly avoid a prison sentence. I am 74 years old and have a heart condition. Any measure of prison time would constitute a life sentence. Given the possibility of a long prison term, I agreed not to exercise my rights in the civil forfeiture proceeding, anticipating from representations made by Dobson that this could possibly keep me out of prison. Dobson retained my signed agreement and provided it to DOJ Counsel before my initial in-person meeting.
>
> During our meeting in Tallahassee, Florida, Cowden requested that I dismiss my claims in the above-captioned civil forfeiture proceeding. Dobson provided Cowden with my signed agreement. I was led to believe

---

later investors/participants to pay so-called 'profits' to earlier investors." Compl. [Dkt. # 1] ¶ 9.

that a grand jury indictment was forthcoming. My attorney represented to me that Cowden had spoken to a judge, persuaded the judge that I was a flight risk, and that I would be held without bail following a prompt indictment. Dobson led me to believe that I would be promptly arrested if I failed to cooperate with Government counsel.

Dobson stated that unless I cooperated, Cowden was prepared to bring criminal actions for wire fraud, money laundering, and conspiracy to commit same. Dobson represented that Cowden would seek the maximum sentences for each charge, which would be in the range of 20-40 years imprisonment.

Dobson lead [sic] me to believe that if I cooperated there was a possibility that I would not be incarcerated or imprisoned.

Based on representations by Dobson, I believed that my cooperation would still result in a criminal sentence that could possibly not include imprisonment or incarceration. Dobson said that none of this could be put in writing. But Dobson had lied to me.

. . .

On January 13, 2009, my attorneys filed a release of claims to seized property and consent to forfeiture. On January 22, 2009, the Court entered its Order granting that motion.

During the course of my two meetings with government counsel, I became aware contrary to what I was led to believe by my counsel that my agreement to freely discuss my involvement with ASD still included a definite imprisonment. . . . [A]fter I had already revealed significant information against my interest, I came to understand that I faced incarceration following a criminal action.

Cowden explained that I would be subject to the maximum penalty under the statute, but that he would inform the judge that I cooperated. I slowly came to understand what I understood from Dobson not to be the case: that my agreement to cooperate provided me no benefit in the criminal matter except the possibility of a reduced sentence if the judge desired which would still be a life sentence. I came to realize that the pleadings were filed not in exchange for the government's relinquishment of seeking a prison sentence but on no agreement at all. That was against my wishes then and is against my wishes now. I had been hoodwinked.

Bowdoin's Resp. to Order to Show Cause [Dkt. # 131], Ex. 1 (Affidavit of Thomas A. Bowdoin, Jr.) ("Bowdoin Aff.") ¶¶ 7-12, 14-16.

Sometime in February 2009, Mr. Bowdoin appears to have decided he would no longer cooperate with the government. Starting on February 27, 2009, he began to file, *pro se*, a series of motions. *See* Dkt. ## 47, 48, 49, 50, & 55. One such pleading, titled "Notice of Rescission and Withdrawal of Release of Claims to Seized Property and Consent to Forfeiture," *see* Dkt # 47, represented Mr. Bowdoin's effort to notify the Court and Government of his intention to re-assert his claims and those of his corporate co-claimants in this *in rem* proceeding. After he retained new counsel, on May 7, 2009, Mr. Bowdoin moved to withdraw the notice and promised, through counsel, to file a more substantive argument on or before May 15, 2009. *See* Dkt. ## 66 & 67. On July 24, 2009, the Court entered an order to show cause why this matter should not proceed without further litigation from Mr. Bowdoin. In response, Mr. Bowdoin filed the instant Renewed Motion to Rescind Release of Claims, which is now ripe for decision. *See* Dkt. # 131.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 60(b) provides for relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct by an opposing party; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). The party seeking relief from judgment bears the burden of proof. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383-84 (1992); *Mazengo v. Mzengi*, 542 F. Supp. 2d 96, 100 n.3 (D.D.C. 2008). Critically, the movant must "demonstrate a meritorious claim or defense." *Lepkowski v. United States Dep't of Treasury*, 804 F.2d 1310, 1314 (D.C. Cir

1986); *accord Norman v. United States*, 377 F. Supp. 2d 96, 98 (D.D.C. 2005) (plaintiff's Rule 60(b) motion denied where "the Court [was] persuaded that reinstatement would ultimately be futile"), *aff'd*, 467 F.3d 773 (D.C. Cir. 2006).

Rule 60(b)(6) permits the amendment of a judgment for "any other reason justifying relief from the operation of the judgment." This catch-all provision gives courts discretion to vacate or modify judgments when it is "appropriate to accomplish justice," *Klapprott v. U.S.*, 335 U.S. 601, 614-15 (1949), but it should be applied only in extraordinary circumstances. *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007) (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer*, 481 F.3d at 792 (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)). Relief under Rule 60(b)(6) "is not available unless the other clauses, (1) through (5), are inapplicable." *Goland v. CIA*, 607 F.2d 339, 372-73 (D.C. Cir. 1979).

### III. ANALYSIS

Mr. Bowdoin's statement that he was "hoodwinked" could be interpreted to mean that he mistakenly released his claims or that there was some misrepresentation or misconduct by the Government, *i.e.*, "an opposing party." *See* Fed. R. Civ. P. 60(b)(1) & (3). Inept advice from counsel, also alleged by Mr. Bowdoin, might be deemed to be an "other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). However, apart from counsel's argument, nothing in Mr. Bowdoin's own sworn statement justifies the conclusion that he was mistaken, that the Government engaged in any misrepresentation or misconduct, or that his attorney provided bad advice. He also fails to present any meritorious defense.

The Government charges that Mr. Bowdoin operated a Ponzi scheme on the Internet, whereby he, using ASD as a vehicle, bilked hundreds of people. Presented by affidavit and testimony outside the crucible of a criminal trial, its evidence appears to be strong. In the face of the civil *in rem* proceedings and the expected criminal prosecution, it is no surprise that his criminal lawyer would recommend a cooperation plea with demonstrated early acceptance of responsibility, *i.e.*, withdrawal of claims to the seized assets, so that Mr. Bowdoin might earn a motion for a downward departure under Section 5K1.1 of the United States Sentencing Guidelines and/or 18 U.S.C. § 3553, both of which allow the Court to impose a sentence below the statutory minimum to reflect a defendant's "substantial assistance" to a Government investigation. *See* U.S.S.G. § 5K1.1; 18 U.S.C. § 3553(e). Such an approach from counsel could be seen as the norm when the Government's evidence is strong.

What Mr. Bowdoin hoped to gain from his release of claims/early acceptance of responsibility and his debriefing with the Government was a promise of no jail time. When that was not forthcoming from the Assistant United States Attorney, Mr. Bowdoin balked and tried to back up, as if he had not already released his claims and talked to the Government. He is certainly free to change his mind and refuse to cooperate with the Government's investigation of ASD and related businesses. What he does not present is any reason recognized by Rule 60(b) for the Court to revise its order releasing his claims. By his own admission:

- Dobson represented to me that I could *possibly avoid prison or get a reduced sentence* if I agreed to disclose details concerning ASD and releasing the assets.

- I also signed a document stating that I would release my claims in the above-captioned civil *in rem* forfeiture proceeding, again thinking that necessary for a *possible avoidance of a prison term*.

- I did all of this on the understanding that *by cooperating I could possibly avoid a prison sentence*.

- I agreed not to exercise my rights in the civil forfeiture proceeding, anticipating from representations made by Dobson that this *could possibly keep me out of prison*.

- Dobson lead [sic] me to believe that if I cooperated *there was a possibility that I would not be incarcerated* or imprisoned.

- I believed that *my cooperation would still result in a criminal sentence that could possibly not include imprisonment* or incarceration.

- Cowden explained that *I would be subject to the maximum penalty* under the statute, but that he would inform the judge that I cooperated.

- I slowly came to understand what I understood from Dobson not to be the case: that *my agreement to cooperate provided me no benefit in the criminal matter except the possibility of a reduced sentence if the judge desired* which would still be a life sentence.

Bowdoin Aff. ¶¶ 8, 11-12, & 16 (emphasis added).

Each of these statements indicates that Mr. Bowdoin completely understood what he was doing: releasing his claims and cooperating to "*possibly* avoid a prison sentence." *Id.* ¶ 8. If he proceeds to trial and the evidence persuades a unanimous jury beyond a reasonable doubt that Mr. Bowdoin is guilty as charged, he will face a term of incarceration for sure. Mr. Dobson's hope was to avoid such a result by avoiding a trial and persuading the Government to file motions with the Court that could be used to argue for a sentence that did not include jail time. It is very strange that Mr. Bowdoin passed that opportunity by, despite clear knowledge that it "could possibly keep me out of prison." *Id.* Perhaps the delay in obtaining an indictment has led Mr. Bowdoin to believe that he will not be indicted after all.[2] The reasons for his decision to cease cooperation and attempt to

---

[2] Mr. Bowdoin believes the Government "submitted charges before a grand jury on or about May 2009," Bowdoin Aff. ¶ 22, but as of this date no indictment has been returned against him in a federal court.

withdraw his release of claims are not revealed; what is clear is that Mr. Bowdoin acted totally voluntarily and with an eye to the possibility of avoiding jail when he executed his release and promised to cooperate.

### IV.  CONCLUSION

There being no basis under Rule 60(b) to grant Mr. Bowdoin's motion, it will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date:  November 10, 2009                                    /s/
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge