# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 08-1345 (RMC)** |
| **v.** | ) | |
| | ) | **ECF** |
| **8 GILCREASE LANE, QUINCY,** | ) | |
| **FFLORIDA 32351,** *etc., et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## THOMAS A. BOWDOIN'S REPLY TO PLAINTIFF UNITED STATES GOVERNMENT'S OPPOSITION TO MOTION FOR RELIEF FROM THE JUDGMENT

***COMES NOW***, claimant, Thomas A. Bowdoin, Jr., by counsel and files this Reply to opposition to plaintiff's Opposition to Motion for Relief from the Judgment, filed February 9, 2010.  Docket Entry #170.  The movant respectfully requests that this Court grant his Rule 60 motion, on the grounds that, prior to final deprivation of a constitutionally protected and significant property interest, movant should be allowed to argue the underlying probable cause for the initial seizure, as well as the alleged nexus between the property seized and the purported criminal activity.

Certainly, movant has evidenced some inconsistency regarding the prosecution of his claim to, and defense of, this res, but, movant submits that this apparent inconsistency represents not strategical maneuvering, as alleged by the plaintiff, but mistaken reliance on legal advice not aimed at best protecting Bowdoin's and AdSurfDaily, Inc.'s ("ASD") interests.

Dockets.Justia.com

Movant through his Rule 60 motion, therefore asserted that it was error for this Court to: (1) deny, by Order dated November 10, 2009 (Docket Entry #156), Bowdoin's motions to reinstate his status as claimant in this action, as requested in Docket Entries #66, 67, and 141; (2) issue the November 20, 2009 Order to Show Cause regarding the pending Motion for Entry of Default Judgment (Docket Entry #161), prior to allowance of Bowdoin to litigate as claimant his claim to the property seized; and (3) enter final order of forfeiture, under Docket Entry #166, prior to expiration of the Fed. R. App. P. 4(a)(1)(B) appeal period of 60 days after entry of the judgment appealed from.

## ARGUMENT

The core issue addressed in the movant's Rule 60 motion is whether Bowdoin, through the ill-advised release of claims back in January 2009 (Docket Entry #39), thereby lost standing to defend his and ASD's ownership interests in the seized res. While the United States is clearly asserting a position strictly construing civil procedure in order to forestall Bowdoin from now contesting the seizure and final forfeiture of these properties, Bowdoin would submit that he is merely trying to correct a costly mistake which occurred when he followed advice from former counsel, who had led him to believe that the January 2009 release of claims was prudent and based upon an express or implied deal with the government, assuring that his cooperation would provide that, if convicted upon any criminal indictment that might issue in this matter, the aged Bowdoin would be spared any sentence necessitating incarceration. Bowdoin seeks only, with his

2

new counsel, to address the probable cause and nexus between the res and the alleged

criminal activity on the merits through adversarial trial.  Certainly, owners of property

seized by the government have an important and constitutionally protected property

interest in the res arrested, and prior to final forfeiture, due process of law dictates that

such owners be afforded a meaningful opportunity to defend on the merits.  Contrary to

the assertion of the plaintiff that Bowdoin "had his day in Court, [but] he simply chose

not to appear for it", (Opposition, Arg. ¶10), the Court has not yet, through adversarial

hearing or trial with Bowdoin, addressed the merits of this seizure, underlying criminal

allegations, and forfeiture.  Bowdoin Should Receive a Meaningful Opportunity to defend

his property and present his case.

It is blackletter law in this circuit that, prior to deprivation of a major property

interest by the government, an owner of property seized for civil forfeiture be afforded a

meaningful opportunity to defend that interest:

> The due process clause requires the government to provide sufficient
> notice and a **meaningful opportunity to be heard on the deprivation of a**
> **protected** liberty or **property interest**. Due process may be satisfied by
> either pre-deprivation procedures or adequate post-deprivation remedies.

*Rason v. Nicholson*, 562 F.Supp.2d 153, 155 (D.D.C. 2008) (quotation formatting and

citations omitted) (emphasis added); *Peavey v. Holder*, 657 F.Supp.2d 180 (D.D.C. 2009)

(citing *Rason*).

Bowdoin as owner-claimant possesses due process constitutional right to contest

the forfeiture of property and an owner of seized property, even post indictment, is

3

entitled to a hearing on the issues of the government's probable cause, and the alleged

nexus between the assets seized and the alleged criminal activity:

> "[T]he fifth and sixth amendments, considered in combination, require an
> adversary, post-restraint, pretrial hearing as to probable cause that (a) the
> defendant committed crimes that provide a basis for forfeiture, and (b) the
> properties specified as forfeitable in the indictment are properly
> forfeitable."

*U.S. v. E-Gold, Ltd.*, 521 F.3d 411, 419, 380 U.S.App.D.C. 310, 318 (D.C. Cir. 2008)

(quoting *U.S. v. Monsanto*, 924 F.2d 1186, 1188 (2d Cir. 1991)).

Importantly, while some other circuits have limited this right to an adversarial

evidentiary hearing to test probable cause and nexus of seized property to the unlawful

activity alleged to circumstances where the seized property is sought to be used to fund

the owner's criminal defense, the United States Court of Appeals for the District of

Columbia Circuit did not so limit this right in the *E-Gold* decision.  521 F.3d at 421, 380

U.S.App.D.C. at 320.

The policy rationale undergirding an owner's right to an adversarial hearing upon

the propriety and evidence justifying seizure and possible forfeiture are, to assure that no

person is deprived of valuable property interests absent constitutional and evidentiary

scrutiny.

> The right to prior notice and a hearing is central to the Constitution's
> command of due process. The purpose of this requirement is not only to
> ensure abstract fair play to the individual, its purpose, more particularly, is
> to protect his use and possession of property from arbitrary encroachment-to
> minimize substantively unfair or mistaken deprivations of property.

4

*James*, 510 U.S. at 53, 114 S.Ct. at 500-01 (quotation formatting and citation omitted).

Another purpose of the pre- or post-seizure adversarial hearing is to afford the owner-claimant the meaningful opportunity to present any defenses, such as the innocent owner defense, or that the claimant did not knowingly utilize or generate proceeds in the furtherance of some criminal endeavor.

> For [forfeiture] claims . . . , the government has the initial burden of establishing probable cause to believe that the property was used to facilitate the commission of a crime punishable under the statute. . . .Once done, the burden shifts to the claimant to prove by a preponderance of the evidence one of two defenses: either that the property was not used to facilitate the commission of a felony, or that it was done so without the claimant's knowledge or consent. . . .

*U.S. v. Prop. Identified as 1813 15Th Street N.W., Washington D.C.*, 956 F.Supp. 1029, 1033 (D.D.C. 1997) (citations omitted).

In the case at bar, despite the United States' argument to the contrary, (Opposition, Arg. ¶10), Bowdoin has not had his "day in Court" on the threshold evidentiary issues of (1) probable cause for the initial seizure and subsequent forfeiture, nor (2) the nexus between the alleged criminal activity and the seized res. The September 30 to October 1, 2008 hearing referred to by the plaintiff was *not* an evidentiary hearing on probable cause and nexus – utilized to test the government's case against the property and assure that the owner will not be deprived of a valuable property interest absent due process – but it was merely a hearing to evaluate and decide the more narrow question of whether to grant Docket Entry #7, an Emergency Motion for Return of Seized Funds. Also, despite the

5

plaintiff's characterization that Bowdoin "had his day in Court, [but] he simply chose not to appear for it", (Opposition, Arg. ¶10), the transcripts for this hearing clearly show that attorneys and witnesses for Bowdoin and ASD did appear, (Docket Entry #33). That Bowdoin himself did not attend was at the advice of counsel. (Bowdoin Aff. ¶ 9.)

In its Opposition to movant's Rule 60 Motion, the United States advances several arguments to support its position that Bowdoin is not entitled to Rule 60 relief from the default judgment and final order of forfeiture.

I.    **It Was Error For This Court To Deny Bowdoin's Requests To Rescind His Release Of Claims Through The November 10, 2009 Order.**

First, the government avers that Bowdoin voluntarily withdrew his claim to the seized property through the January 13, 2009 Motion to Withdraw Claim (Docket Entry #39), and thus he is no longer a claimant with standing to contest filings in this *in rem action*, characterizing his subsequent repeated motions to rescind the release of claims as a calculated strategical move designed to best advance his personal interests. (Opposition at 4, 12.) No longer a claimant with standing to object to filings in this matter, the United States then makes the illogical argument that Bowdoin was somehow negligent by not filing oppositions to the filings following the order finally disposing of Bowdoin's multiple motions seeking to rescind his prior release of claims. The crux of this motion is that absent avoidance of the November 10, 2009 order denying the requested restoration of his status as a claimant (Docket Entry #156), none of the subsequent filings can be (or could have been) responded to by Bowdoin (i.e., Docket Entries #163 and 166).

6

**II.**     **The Error Alleged Regarding The November 10, 2009 Order Was In Its Denial Of The Reinstatement Of Bowdoin's Claimant Status, As Absent A Valid Claim, Bowdoin Has No Standing To Object To Any Subsequent Filings.**

On a related point, the United States argues that the movant alleged no error regarding the November 10, 2009 order (Docket Entry #156) denying as moot Bowdoin's several motions to rescind his release of claims.  (Opposition, Arg. ¶2.)  This conclusion is demonstrably incorrect – the error alleged by movant regarding entry of the November 10, 2009 order, (Docket Entry #156), denying as moot Bowdoin's several motions to rescind his release of claims, is that this Court's denial of reinstatement of Bowdoin's status of claimant deprived him of his due process right to a meaningful trial on the merits in this aciton, as well as the right to object to any subsequent filing in this action. (Motion ¶4).  As acknowledged by the plaintiff in its Opposition, lacking status as claimant, Bowdoin lacks the standing as an intervening owner asserting valid claims of the res the subject of the in rem action: "If Mr. Bowdoin is not a claimant, he logically cannot show cause why the forfeiture should nor be enforced".  (Opposition, Arg. ¶7.)

The government itself acknowledges the error Bowdoin seeks to overcome through this Rule 60 motion:

> Unless the Court revises the [November 10, 2009] ruling that Mr. Bowdoin has irrevocably withdrawn from the case, it will make no difference if the Court then reissues the later order to show cause.  (Opposition, Arg. ¶7.)

The entry of the original release of claims here was tainted by unilateral mistake, made by prior counsel.  Bowdoin was assured by his prior counsel that, if he released his

7

claims in this action, he would not be facing any incarceration.  This assertion – the very

consideration upon which Bowdoin decided to relinquish his proprietary interest in a

substantial quantity of property – was in fact illusory.  (Bowdoin Aff. ¶ 6.)  Releases

based upon unilateral mistake may be rescinded:

> A court may void or reform a release on several grounds, including . . .
> unilateral . . . mistake, misrepresentation, duress, or under other
> circumstances in which the parties' conduct evinces an intent to allow
> additional claims.

*Axion Corp. v. U.S.*, 68 Fed.Cl. 468, 475 (Fed.Cl. 2005) (emphasis added) (quotation

punctuation and citation omitted).  A "mistake," as would justify rescission of a prior

release, is a belief that is not in accord with the facts.  *Cruz v. American Airlines*, 150

F.Supp.2d 103, 116 (D.D.C. 2001).  Here, Bowdoin's January 2009 motion to withdraw

his claim (Docket Entry #39) was entered solely based upon the unilateral mistaken belief

that his release of claims would unequivocally assure that any subsequent criminal

sentence entered would not include any prison term.  When Bowdoin discovered this

consideration to be illusory, he naturally sought vigorously to rescind his release of

claims.  (Bowdoin Aff. ¶ 6.)

　　　All movant Bowdoin wants is the opportunity to meaningfully review the criminal

allegations against him in an adversarial hearing, prior to any final order of forfeiture

being entered in this action.  The prior two-day hearing in the Fall of 2008 on the narrow

issue of deciding the Emergency Motion for Return of Seize Funds did not fulfill that

opportunity.  Certainly the due process interests in assuring that an owner of seized

property is not erroneously deprived of said *res* outweigh the inconvenience of briefly

staying entry of any final order of forfeiture until a meaningful hearing can be had on the

merits?

### III.   Bowdoin's Counsel Did Not Receive Actual Notice From The Electronic Filing After November 10, 2009, Constituting Rule 60(b)(1) "Excusable Neglect."

Despite the United States' incredulity, the movant's legal counsel to be noticed

(Charles Murray) did not in fact receive the electronic filings of any document filed in

this action after November 10, 2009,  (Murray Aff. ¶ 3)  Bowdoin lacked actual notice

that any post-November 10, 2009 filings had been entered. Consequently, no response

was filed to the Motion for Default Judgment (Docket Entry #161), the Order to Show

Cause on the default judgment (Docket Entry #163) or the January 4, 2009 Order granting

said Motion for Default Judgment (Docket Entry #166).  (Murray Aff. ¶ 4)  Therefore,

neither Bowdoin nor his counsel were on actual notice of these filings.

The United States opines that Bowdoin's failure to file a return regarding the

November 20, 2009 Order to Show Cause based on lack of notice was unbelievable,

given that Bowdoin electronically filed a motion in mid December, and would have had

to have not checked the docket for a month. (Opposition, Arg. ¶8.)  However, that is what

happened.  Bowdoin's counsel, Charles Murray, is a sole practitioner handling an average

of 50 to 100 cases simultaneously.  It certainly would be an onerous requirement were he

expected to check the dockets of 50 to 100 cases daily, on the happenstance that notice

may not have been electronically delivered of a filing.  (Murray Aff. ¶ 5.)  Prior to

electronic filing, hand delivery of hard copy filings assured actual notice; such is not the

case with purely electronic filings.  During the period in question (mid November 2009

through early January 2010), Mr. Murray experienced as yet unidentified computer issues,

wherein multiple email messages apparently never loaded to the firm's Inbox.  (Murray

Aff. ¶ 6.)  A February 12, 2010 search through archived emails on the server located no

ECF filings after November 10, 2009, nor the courtesy email apparently sent by Assistant

U.S. Attorney Barry Wiegand on November 18, 2009.  (*Id.* ¶ 7.)  Thus, contrary to the

United State's assertion that "Mr. Bowdoin was on actual notice of the motion for a

default judgment", this simply was not the case.  (*Id.* ¶8.)

     In this Circuit, it has been held that problems with receiving actual notice through

the ECF system can constitute excusable neglect under Fed.R.Civ.P. 60(b)(1), especially

where such lack of notice would undermine trial on the merits:

> Federal Rule of Civil Procedure 60(b)(1) provides that a court may
> relieve a party from an adverse judgment based on "mistake, inadvertence,
> surprise, or excusable neglect."  Plaintiff's counsel avers that his firm is
> unfamiliar with the Electronic Case Filing ("ECF") system used by this
> Court, and apparently failed to receive e-mail notification of the status
> conference. Under the circumstances, and in light of the risk of prejudice to
> plaintiff should this Court not reach the merits of his case, the Court
> considers counsel's explanation to be excusable neglect within the meaning
> of the Rule. Accordingly, the Court will reinstate the case if plaintiff is able
> to demonstrate an underlying meritorious claim. . . .

*Norman v. U.S.*, 377 F.Supp.2d 96, 99 (D.D.C. 2005) (citations omitted), *affirmed* 467

F.3d 773, 373 U.S.App.D.C. 312.  As in *Norman*, here, Bowdoin and his counsel, in good

10

faith, experienced technical problems receiving emails from the EFC system (as well as a

courtesy email regarding one filing from opposing counsel).  As a result, in the interests

of resolving this action on its merits, movant respectfully requests relief from the January

4, 2010 final order of forfeiture pursuant to Fed.R.Civ.P. Rule 60(b)(1).

**IV.   Rule 60 Relief Is Warranted In Order To Assure Trial On The Merits Regarding The Propriety Of The United States' Criminal Allegations Against Bowdoin And ASD.**

The United States argues that Rule 60 relief is inapposite here because "Mr.

Bowdoin cannot possibly show the meritorious defense necessary to grant a Rule 60

motion". (Opposition, Arg. ¶6).  Whether this statement characterizes the impossibility of

a meritorious defense as stemming from Bowdoin's lack of status as claimant with

standing (which is the error alleged regarding the November 10, 2009 Order, Docket

Entry #156), or based instead upon plaintiff's assessment of the merits of the underlying

criminal allegations, this assertion is simply not true.

Certainly the Court could grant the Rule 60 motion regarding the November 10,

2009 Order (Docket Entry #156), in which case Bowdoin would possess the standing he

seeks.  Thereafter, the "meritorious defense" issue would turn solely upon the merits of

the United States' characterization of the ASD business model as the unlawful sale of

unregistered securities.  As developed in the pleadings of Bowdoin in this matter thus far,

the characterization of ASD as an illegal Ponzi scheme selling unregistered securities is

far from a foreclosed issue.  The very language of the Terms & Conditions agreement

between ASD and its advertiser-members expressly and unequivocally states that ad packages were being sold, and not investments, nor was there any promise or guarantee of financial return. These two factors alone defeat the analysis of ASD ad packages as unregistered securities. It is well-established that owner-claimant Bowdoin has unwaveringly asserted his belief that the business model of ASD was instead a multi-level marketing enterprise, and he specifically hired specialist legal counsel Gerald Nehra to evaluate the model, so as to assure that ASD operations would not run afoul of any federal unregistered sale of securities law. (Bowdoin Aff. ¶ 4); (Transcript of Sep. 30, 2008 Hearing at pp.103-06, Docket Entry #33).

Even a cursory analysis of the criminal statutes at play in this case reveal serious issues concerning the government's probable cause, allegedly justifying seizure and subsequent forfeiture. One of the major criminal offenses alleged against Bowdoin by the government, as the basis for civil forfeiture pursuant to 18 U.S.C. 981, is money laundering, and conspiracy to commit the same (Complaint Counts III & IV), which expressly requires knowledge by the offender that the monetary transactions are unlawful:

> As provided in § 1956, one of the several ways to commit money laundering is by:
>
>> *knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ing] or attempt[ing] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... *knowing* that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the

> proceeds of specified unlawful activity[.]
>
> 18 U.S.C. § 1956(a)(1)(B)(i). The court['s] . . . . approach is two-pronged: (1) that the claimant *knew* that the monetary instrument(s) involved in a financial transaction represented proceeds of some form of unlawful activity and (2) with that *knowledge* used the proceeds to conduct or to attempt to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity. . . .

*U.S. v. Funds from Prudential Sec.*, 362 F.Supp.2d 75, 79-80 (D.D.C. 2005) (quotation punctuation and citations omitted).

Similarly, the other criminal offenses alleged against Bowdoin by the government require that the person accused possess *knowledge* that his actions constituted unlawful activity. Regarding wire fraud, and conspiracy to commit the same (Complaint Counts I and II), a person must have "*devised or intend[ed] to devise* any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire[.]" 18 U.S.C.A. § 1343 (emphasis added).

Although not appearing in the Complaint as a Count at all, unlawful sale of unregistered securities argued elsewhere by the government in this action, pursuant to 18 U.S.C.A. § 77e and 78j, and conspiracy to commit the same, have also been construed as requiring knowledge by the seller: "In order to establish the essential elements of knowledge and willfulness under the conspiracy count, the government was required to prove either that appellants knew, or that they deliberately closed their eyes to, the necessity for registering the S-H stock before selling it." *U.S. v. Rubinson*, 543 F.2d 951,

13

959 (2d Cir. 1976), *cert. denied* 97 S.Ct. 139, 429 U.S. 850, 50 L.Ed.2d 124.

Thus, each of the criminal counts and arguments alleged against Bowdoin, each of which supposedly support civil forfeiture of the assets seized in this action, require that Bowdoin *knew* he was engaged in unlawful activity, and intended to violate money laundering, securities fraud, and wire fraud prohibitions.  Indeed, the Complaint in this action expressly asserts that same, borrowing the phrasing of the afore cited federal statutes: "there is reasonable cause to believe that ASD, Thomas A. Bowdoin, Jr. and others, **devised and intended to devise** a scheme or artifice to defraud, or a scheme for obtaining money or property by means of false or fraudulent pretenses. . . ."  (Docket Entry #1 ¶69) (emphasis added).

As each of these authorities reveal, that fact that Bowdoin believed (and still believes) that the ASD business model was *not* selling unregistered securities, the allegations of wire fraud, money laundering, and securities law violations cannot be sustained due to Bowdoin's lack of intent.  This is precisely the reason that these issues need to be fully developed in an adversarial trial on the merits.

Given that an enormous quantity of property is at stake, some of which properly belongs to the member-advertisers of ASD, and given that forfeiture would permanently deprive innocent or rightful owners of these valuable properties, it is essential that Bowdoin be afforded a meaningful opportunity to test the plaintiff's probable cause against him, as well as the purported nexus between each seized res and the alleged

unlawful activity prior to final order of forfeiture.

## CONCLUSION

To avoid manifest injustice, owner-claimant Bowdoin respectfully requests that this

Court grant his Rule 60 motion, and thereby postpone or stay default judgment, and final order of

forfeiture, until Bowdoin may appear and protect his constitutionally protected property

interests.

Respectfully submitted,                          Respectfully submitted,

*S/ Michael R.N. McDonnell*                       *S/ Charles A. Murray*
Michael R.N. McDonnel, Esq.                       Charles A. Murray, Esq.
5150 Tamiami Trail North                          27911 Crown Lake Blvd., Suite 223
New Gate Tower, Suite 501                         Bonita Springs, Florida 34135
Naples, Florida 34103                             Tel:          239- 649-7773
Tel:          239-434-7711                        Facsimile:    239- 262-3517
Facsimile:    877-613-7485
Attorney for Thomas A. Bowdoin, Jr.               Attorney for Thomas A. Bowdoin, Jr.

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing motion and accompanying memorandum has been delivered this 17th day of February 2010, by ECF to insure delivery thereof to Vasu Muthyala DC Bar #496935 Assistant United States Attorney, U.S. Attorney's Office, Criminal Division, 555 Fourth Street, N.W., Washington, D.C. 20530 and Barry Wiegand, U.S. ATTORNEY'S OFFICE, 555 Fourth Street, N.W Room 4818, Washington, D.C. 20530.

Respectfully submitted,                          Respectfully submitted,


*S/ Michael R.N. McDonnell*                       *S/ Charles A. Murray*
Michael R.N. McDonnel, Esq.                      Charles A. Murray, Esq.
Attorney for Thomas A. Bowdoin, Jr.              Attorney for Thomas A. Bowdoin, Jr.